**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CLAUDIO FARIASANTOS, *on behalf of
himself and all others similarly situated,*

      Plaintiff,

v.                                                Civil Action No. 3:13-cv-543

ROSENBERG & ASSOCIATES, LLC

      Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS THE PLAINTIFF'S CLASS ACTION COMPLAINT**

      COMES NOW the Plaintiff, by counsel, and as for his Memorandum in Opposition to the

Defendant's Motion to Dismiss the Plaintiff's Class Action Complaint (Docket No. 9), he

respectfully submits this memorandum of law.

## INTRODUCTION

      This case is brought pursuant to the Fair Debt Collection Practices Act (FDCPA), 15

U.S.C. § 1692, *et seq.*, which is a remedial statute, the purpose of which is to "eliminate abusive

debt collection practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promote

consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

One of the provisions of the FDCPA at issue in this case, § 1692g, was specifically recognized

by the Senate as a significant feature of the FDCPA in order to guarantee that consumers would

receive adequate notice of their legal rights. Yet, the Defendant wants this Court to believe that

its violations of this strict liability statute are "hyper-technical" deficiencies, arguing that because

it believes that the Plaintiff is not confused about his debt, the Court should dismiss the

Complaint. It is apparent that the Defendant misunderstands the purpose of the FDCPA, as well as its liability thresholds. Regardless, in his complaint, the Plaintiff plausibly alleges that the Defendant, a foreclosure mill law firm, made statements and acted in a manner that violated the FDCPA, a rigorous strict liability statute. The Plaintiff's FDCPA claims are very similar to several recent cases against other foreclosure law firms that have survived Rule 12(b)(6) challenges. *See Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011); *Naim v. Samuel I. White, P.C.*, Civ. No. 3:11-cv-168 (E.D. Va. August 12, 2011); *Scott v. Bierman, Geesing, Ward & Wood, LLC*, Civ. No. 3:12-cv-271 (E.D. Va. 2012); *Thomas v. Wittstadt Title & Escrow Company, LLC*, Civ. No. 3:12-cv-450 (E.D. Va. 2012).

The FDCPA protects the "least sophisticated" consumer against, among other acts, misrepresentations by debt collectors. In this case, Plaintiff alleges that the Defendant violated the FDCPA by failing to sufficiently make the required disclosures in § 1692g and, additionally, by making misleading statements and inaccurate representations in its collection letters that would confuse the least sophisticated consumer. Defendant argues otherwise, misstating the conclusions of some cases; and suggesting the applicability of others that actually support the Plaintiff's claims.

## STANDARD OF LAW

Defendant's motion, mischaracterized as a Motion for Judgment on the Pleadings, is of course really only a routine Rule 12(b)(6) challenge to the Complaint. To prevail on a motion to dismiss under Rule 12(b)(6), a Defendant must prove that the Plaintiff has, in taking all factual allegations as true, failed to state a facially plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. However, plausible grounds for a claim "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses." *Foster v. Wintergreen Real Estate Company*, 2008 WL 4829674, 3 (W.D.Va.); *see also Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A complaint will survive a Rule 12(b)(6) motion to dismiss as long as it sets out facts sufficient for the court to infer that each element of a cause of action is present. *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 334-45 (4th Cir. 2006); *Wolman v. Tose*, 467 F.2d 29, 33 (4th Cir. 1972). When considering these motions to dismiss, the court must construe the complaint in a light most favorable to the plaintiff and assume its factual allegations to be true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite*, 991 F.2d 94, 97 (4th Cir. 1992). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).

## ARGUMENT

In order to state a claim for a violation of the FDCPA, the Plaintiff must allege (1) the plaintiff is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt is a "debt collector" within the meaning of the statute; (3) the defendant has violated by act or omission a provision of the FDCPA. *Creighton v. Emporia Credit Serv. Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997).

A.      **The Complaint contains sufficient detail to satisfy Rules 8(a)(2) and 12(b)(6).**

The Defendant supports its motion to dismiss by simply ignoring elements of the claims and the salient facts alleged in the Complaint and by disregarding the limitations of a Rule 12(b)(6) motion. This Court recently summarized "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Engel v. Francis*, 2011 WL 797244, *1 (E.D. Va. Feb. 25, 2011). Factual allegations must be accepted as true and, as shown below, demonstrate that Plaintiff has stated a claim under the FDCPA for the relief he has requested. *Id*.

The largest divide between the Plaintiff's position and Defendant's arguments is the parties' understanding of Rules 8(a)(2) and 12(b)(6). A complaint satisfies Rule 8 if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In this case, the Plaintiff has alleged sufficient detail by which the Defendant can answer and by which the Court can determine the plausibility of his claims. In order for the Defendant to prevail in its motion, it must demonstrate that the Plaintiff has supplied no facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). The burden is no higher.  For example, Plaintiff is not required to satisfy the more rigorous pleading standard for fraud as Rule 9(b) otherwise requires.  *See, e.g.*, *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1058 (C.D. Cal. 2009) (explaining that "[t]he FDCPA is not such a lengthy or complex statute as to render Defendants unable 'to prepare an adequate defense'" without more specific pleading detail").

The Complaint not only alleges that the Defendant is a debt collector who regularly collects or attempts to collect consumer debts, but also details the efforts that the Defendant undertook to collect money from Mr. Fariasantos allegedly owing on a past due home mortgage note. *See* Pl.'s Compl. ¶¶ 6-39. The well-pleaded allegations in the Complaint state a claim for

relief.

**B.     The Plaintiff has satisfied the first two elements of a FDCPA claim**

Before addressing each argument in turn, it is important to recognize that the Defendant does not challenge Mr. Fariasantos's allegations that he is a consumer and that the Defendant is a debt collector as defined by the FDCPA. Instead, the Defendant claims that its conduct did not violate the FDCPA as a matter of law. As conceded, Defendant meets the FDCPA's principal definition of a "debt collector," which states: "The term "debt collector" means any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). In turn, a "debt" is defined as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The civil liability section of the FDCPA then provides for the private relief that Plaintiff now seeks whereby "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person". 15 U.S.C. § 1692k(a).

Plaintiff has alleged that the Defendants violated the FDCPA by: (1) by threatening to file civil actions in court in connection with that collection of a home loan debt when it had no intent to do so; and (2) by failing to include "by the debt collector" or similar language in the required § 1692g(3) component of the thirty day validation notice disclosure and thereby failing to provide the Validation Notice as required by the FDCPA.  The Defendant disagrees with the import of these FDCPA provisions and the law interpreting them, but it cannot fairly assert that Plaintiff's facts are inadequate, uncertain or implausible.

**C.     The Plaintiff plausibly alleges that the Defendant violated § 1692e.**

Section 1692e provides that:

> A debt collector may not use any false, deceptive, or misleading representation . . . in connection with the collection of any debt [including] the threat to take any action that cannot legally be taken or that is not intended to be taken; [and] the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. The Plaintiff alleges that the Defendant violated this provision by threatening to file civil actions in court in connection with that collection of a home loan debt when it had no intention of doing so. *See* Pl.'s Compl. ¶¶ 14–19. A cursory review of the Complaint reveals that Plaintiff not only plausibly alleged a violation of § 1692e, but that Defendant violated the statute as a matter of law. Nevertheless, Defendant's opposition attempts to factually attack the Plaintiff's allegations and altogether ignores the law in this Circuit, this District and even this courthouse which rejected these very arguments Defendant now asserts.

### 1. The Capacity to Mislead.

The FDCPA demands a degree of clarity and comprehensible representations sufficient for the "least sophisticated consumer." *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011). Falsity and deception under § 1692e are tested by the "least sophisticated consumer" standard. "The test is the capacity...to mislead; evidence of actual deception is unnecessary." *United States v. National Financial Services, Inc.*, 98 F.3d 131, 139 (4th Cir. 1996). The Second Circuit has explained the purpose and provenance of this standard:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law.

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1983) (*quoting Federal Trade Commission v. Standard Education Society*, 302 U.S. 112, 116 (1937)). The question is not whether the

misrepresentation or falsehood misleads a particular Plaintiff or consumer, but instead whether it

has the capacity to mislead the "least sophisticated" consumer.  Judge Smith summarized the this

standard and the substantial difference between the FDCPA and material fraud:

> A claim under § 1692e, however, differs substantially from a common law fraud claim. For example, a plaintiff asserting a claim under § 1692e **need not prove actual reliance** on a false representation. *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 139 (4th Cir.1996) (reasoning that "***evidence of actual deception is unnecessary***" to establish a claim under § 1692e(10)). In addition, a plaintiff **need not establish actual damages** to prevail under the FDCPA. *See* § 1692k(a)(2) (providing for statutory damages in addition to actual damages); *Morgan v. Credit Adjustment Bd., Inc.,* 999 F. Supp. 803, 808 (E.D.Va.1998) (awarding a plaintiff statutory damages and costs). Furthermore, a plaintiff does not have a burden to establish scienter under the FDCPA. *See* § 1692k(c) (explaining that to avoid liability under the Act, the *defendant* may show that a violation was not intentional).  In other words, establishing a violation of § 1692e is a substantially different matter than establishing common law fraud.

*Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006) (emphasis

added).  And Judge Ellis more recently explained:

> The FDCPA provides a cause of action where a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and enumerates a nonexhaustive list of actionable conduct. 15 U.S.C. § 1692e. Importantly, the Fourth Circuit has held that "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.,* 98 F.3d at 139; *see also Neild v. Wolpoff & Abramson, LLP,* 453 F.Supp.2d 918, 923 (E.D.Va.2006) ("[A] plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation.").

*Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757-58 (E.D. Va. 2010).

The Defendant argues that its use of the phrase "[the servicer] has referred the loan to this

office for legal action" is not actionable. As support, the Defendant offers what it hopes is a

passable alternate explanation, *i.e.*, that a foreclosure is a non-judicial legal action. But the

FDCPA is not § 1983.  A defense does not prevail merely by suggesting a reasonable articulable

alternate explanation.  Instead, the question is not what the Defendant can defend as a possible

meaning, or even what Defendant may have intended (though its present explanations are also

incredible).   Instead, it is the capacity to mislead or decisive a least sophisticated consumer.

Judge Spencer, in a very similar case, has already explained:

> Under this test, a statement is false or misleading if "it can be reasonably read to have two or more meanings, one of which is inaccurate." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir.2006) (citation omitted). The test requires a court to consider a statement's "capacity ... to mislead," such that "evidence of actual deception is unnecessary." *Nat'l Fin. Servs.*, 98 F.3d at 139.

*Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011).   Thus, the

question is not whether or not the Defendant really intends for the Court to believe that a

consumer could interpret "legal action" as a non-judicial activity, or whether there exists one

plausible interpretation that would be truthful.   Instead, the question is whether, not withstanding

one alternate or even reasonable truthful interpretation, a least sophisticated consumer could

interpret the statement in a different way.   *Id.   See*, *e.g.*, *Finch v. Silverstein*, 1996 WL 467251

(N.D. Ill. Aug. 13, 1996); *Johnson v. Ardec Credit Servs., Inc.*, 1984 U.S. Dist. LEXIS 24889

(N.D. Ga. Mar. 21, 1984); *Yelvington v. Buckner*, Clearinghouse No. 36,581 (N.D. Ga. 1984);

*Williams v. Rash, Curtis & Assocs.*, 1978 U.S. Dist. LEXIS 20395 (N.D. Ga. Dec. 13, 1978).

### 2. A Least Sophisticated Consumer could Interpret the Phrase "Legal Action" as a Threat to File a Lawsuit.

Defendant's real argument is not that the Complaint does not plausibly state a violation of

§ 1692e, but rather that a foreclosure could be interpreted as a legal action; therefore, its

statements do not threaten any action that it did not intend to take. However, this argument

ignores that the least sophisticated consumer would undoubtedly interpret the phrase legal action

as a lawsuit. This Court's recent opinion in *Goodrow* addresses the interpretation of "legal

action" within this precise context. In *Goodrow*, the plaintiffs alleged that the defendant violated

the FDCPA by threatening "'legal action' when they had no intent to bring such action in this

non-judicial foreclosure state." *Goodrow*, 2013 U.S. Dist. LEXIS at *45-46; *see also Goodrow v.*

*Friedman & Macfadyen, P.A.*, Civil Action No. 3:11-cv-020 (Docket No. 117 at ¶ 117, 353).[1] In

denying the defendant's motion to dismiss, the Court stated:

> **In this non-judicial foreclosure state, it is not plausible that a law firm intended to file a civil action.** The suggestion of a lawsuit against a borrower facing foreclosure could plausibly mislead the least sophisticated consumer, affecting his or her ability to make intelligent decisions with respect to the debt. Indeed, the repeated implication that a lawsuit exists, within a short time period, potentially heightens the import of each statement.

*Id*. at 47-48 (emphasis added). To that end, the Court expressly recognized that the term "action"

"suggests a legal suit, rather than a foreclosure, which in Virginia would be non-judicial and

without need for legal process." *Id*. at 47. There is no reason not to apply this same rationale

because the very language used by the Defendant mirrors that of the debt collector in *Goodrow*.

*Id*. at 13. (stating defendant's initial correspondence stated   plaintiffs' "loan[s] [had] been

referred to this office for legal action based upon a default under the terms of your

Mortgage/Deed of Trust and Note."). The possible ambiguity and vagueness that Defendant

identifies is not a defense to a § 1692e violation but defines it.

The Fourth Circuit Court of Appeals' opinion in *National Financial Services* also shows

that Defendant's notice not only has the capacity to mislead, but violated § 1692e on its face. In

*National Financial Services*, the debt collector appealed the decision of the trial court, which

concluded that the debt collector's notices violated § 1692e(5) by threatening legal action when

no present intention of taking legal action existed at the time the notices were sent. *Id*. at 136.

The trial court based its finding, in part, on the fact that the debt collector had no internal

procedure to get authorization to file suit; that the debt collector had not filed lawsuits on behalf

---

[1] Defendant selectively quotes from *Goodrow* to create the appearance that it is entirely distinguishable from the present facts because the debt collector in *Goodrow* also used a lawsuit-like caption and referred to dismissal of an action. *See* Def.'s Mem. Supp. Mtn. to Dismiss 9. Yet, a cursory review of *Goodrow* reveals that the lawsuit-like caption and dismissal were not the only allegations in support of the plaintiffs' violations of the FDCPA. *Id*.

of the original creditor during the period of time; and that the debt collector lacked evidence to show which accounts warranted legal action. *Id*. at 137. On appeal, the debt collector argued that a jury could reasonably find that the original creditor intended to file suit against some or all of its debtors because of internal discussions regarding the mechanics of filing suits. *Id*. In rejecting this argument, the court stated:

> The fact that [the debt collector's attorney] filed 15 suits in 1984 (before the period covered by this lawsuit) means nothing in the context of the literally millions of notices sent out for years afterward. [The debt collector's attorney] had no real involvement with sending the letters. He never reviewed the files and he wasn't involved in deciding when or to whom letters were sent. ***He exercised no judgment with regard to the files, he didn't see the letters, didn't sign them, and didn't even know their identities***. Likewise, even if [the debtor collector's attorney] tossed around the idea with [original creditor] of singling out some debtors for suit in particular regions in order to make examples out of them, there is no evidence that a determination to sue was actually made or even considered with regard to any of the millions of customers who received the [debt collector's] correspondence. And even if it were remotely credible that [original creditor] intended to sue every debtor, there is no evidence that [original creditor] ever took any step toward that goal. An inchoate "intention" to someday sue "all debtors" cannot establish blanket justification for six years of sending millions of threatening letters. ***There must be a particularized intention to sue a particular debtor if he or she does not pay.***

*Id*. at 138 (emphasis added). Simply put, as alleged in the Complaint, there was never a particularized intention to institute a lawsuit against the Plaintiff at the time the notice was mailed on December 4, 2012, neither BB&T nor Defendant took any step toward that goal.

The plain language of Code § 1692i of the FDCPA, which is entitled "Legal actions by debt collectors," also demonstrates that the phrase "legal action" means lawsuit (at the very least). This subsection, in relevant part, provides:

> (a) Venue. Any debt collector who brings ***any legal action*** on a debt against any consumer shall--

> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, ***bring such action only in a judicial district or similar legal entity*** in which such real property is located; or

>    (2) in the case of an action not described in paragraph (1), ***bring such action only in the judicial district or similar legal entity***--
>
>    (A) in which such consumer signed the contract ***sued upon***; or
>    (B) in which such consumer resides at the ***commencement of the action***.

15 U.S.C. § 1692i (emphasis added). As the plain language suggests, a legal action (at the very least) involves judicial intervention and a lawsuit. Any other interpretation would render the bold type absolutely meaningless. The United States District Court for the District of Minnesota, a nonjudicial foreclosure state, reached this same conclusion when interpreting the applicability of § 1692i to a non-judicial foreclosure. *See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, 2007 U.S. Dist. LEXIS 67826, *9 (finding that section 1692i(a)(1) was not applicable because the debt collector did not bring "a legal action against [the plaintiff]" because it was conducting a nonjudicial foreclosure); *see also Maynard v. Bryan W. Cannon, P.C.*, 650 F. Supp. 2d 1138, (D. Utah 2008) (stating that 1692i was only applicable to judicial foreclosures, not non-judicial foreclosures). Moreover, the meaning of the term "legal action" within this context becomes even more apparent when § 1692i is compared with the language in §1692f, which expressly acknowledges the possibility (and distinction) of "nonjudicial action". *See* 15 U.S.C. § 1692f(6).

### 3. Defendant's Reliance on *Castro* is Misplaced.

Defendant offers four cases in support of its absurd position that a least sophisticated consumer would interpret Defendant's reference to legal action as ***only*** a threat to foreclose and nothing else. All four cases are easily distinguishable from the instant case, although Defendant almost exclusively relies on the decision of the United States District Court for the Southern District of New York in *Castro v. Green Tree Servicing, LLC*, 2013 U.S. Dist. LEXIS 115089 (S.D.N.Y. 2013). In doing so, Defendant cites *Castro* as standing for the proposition that the indication that "a legal action was an option, as opposed to representing that the lawsuit was filed

or was imminent, was not a threat and did not violate the FDCPA." *See* Def.'s Mem. Supp. Mtn. to Dismiss 7. However, Defendant's reliance on *Castro* ignores one critical difference between Virginia and New York – New York is a judicial foreclosure state where the foreclosure begins when the lender files a complaint. Thus, the threat of the lawsuit in *Castro* was entirely possible (if not probable) as opposed to the present case where Defendant never had any intention of instituting a judicial proceeding against the Plaintiff. Moreover, there is a material difference between the statement in *Castro* ("[i]f this matter is not resolved by 01/29/10, we may commence legal action against you") and the present statement that "Branch Banking and Trust Company **has referred the loan to this office for legal action** based upon a default under the terms of the loan agreement." *See* Compl., Ex. A (emphasis added). Unlike the conditional language in *Castro*, Defendant never stated that it may institute legal action or that legal action was a possibility. Instead, Defendant's misrepresented BB&T's present intent to commence a lawsuit even though it never intended to do so. Yet even if Defendants' drafting skill was more effective at walking that line between technical truth and outright deceit, this court should reject a hyper-literal approach which ignores the ordinary connotations of "legal action" used in the real world. *National Financial Services, Inc.*, 98 F.3d at 138. Similar arguments were rejected by the Fourth Circuit, stating:

> With these arguments, the defendants ask this court to adopt a hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world. We decline to do so. We concur with the district court's analysis of the notices, and conclude that the defendants' notices threatened to take legal action which they had no intention of taking, in violation of § 1692e(5). No reasonable juror could conclude that those statements were not meant to make debtors fear that they would be sued. To find otherwise would undermine the consumer protection goals of the statute and permit debt collectors to get away with accomplishing the threat under the flimsy disguise of "statements of fact." As we have said before in the context of § 1692g, "there are numerous and ingenious ways of circumventing [the law] under a cover of technical compliance. [The defendants have] devised one such way, and we think

that to uphold it would strip the statute of its meaning." Here, we have an obvious intention to make debtors afraid that they would be sued, an effective tactic no doubt, but one which violates the law.

*Id*. at 138 (internal citations omitted).

Defendant's mere citation to *Sparks*, *Riveria*, and *Blackwell* is also misplaced because these cases are neither factually nor legally similar. *See* Def.'s Mem. Supp. Mtn. to Dismiss 7. None of these cases involved a threat of a nonjudicial foreclosure or any foreclosure whatsoever. In addition, each of these cases focused on the use of language indicating that upcoming lawsuit was a possibility. *Sparks*, 641 F. Supp. 2d at 1249 ("[s]he said she can force us to sell the house through the probate office."); *Riveria*, 682 F. Supp. at 178 ("legal action may be necessary in order to collect this [bill]"); *Blackwell*, 526 F. Supp. at 537-538 (N.D. Ga. 1981) ("YOUR DELINQUENT ACCOUNT may be scheduled for referral to an attorney for action."). Worst yet, *Blackwell* actually applied the "reasonable consumer" standard to the alleged §1692e violation and was subsequently rejected by the Eleventh Circuit in *Jeter v. Credit Bureau*, 760 F.2d 1168, 1175 (11th Cir. 1985).

### 4. Black's Law Dictionary, this Court's Interpretation in *Goodrow*, and Other Dictionaries Support Plaintiff's Interpretation.

Defendant's use of the definition of "legal" and "action" in Black's Law Dictionary is also self-serving and unavailing. Specifically, Defendant claims that Black's Law Dictionary defines "action" as "the process of doing something, conduct or behavior." *See* Def.'s Mem. Supp. Mtn. to Dismiss 6. To that end, Defendant argues that this definition "does not limit the meaning of the words 'legal action' to a lawsuit, or judicial proceeding, and Plaintiff's strenuous argument to the contrary is without merit." *Id*. This argument misses the point about whether "legal action" has the "capacity to mislead" the least sophisticated consumer. More importantly, Defendant failed to provide the Court with the full definition of the term "action" in Black's

Law, which further defines an action as "a civil or criminal judicial proceeding." Black's Law Dictionary 12 (3rd Ed. 2001). This definition is also consistent with the Court's interpretation of action in *Goodrow*, where the Court reasoned that "an 'action' plausibly suggests a legal suit, *rather than a foreclosure*, which in Virginia would be non-judicial and without need for formal legal process." *Id*. at 47 (emphasis added). Thus, the definition of the term action actually supports the Plaintiff's interpretation and Defendant's self-serving quotation of Black's Law should be disregarded.[2] Accordingly, it certainly is plausible that a least sophisticated consumer could be misled into believing that either a lawsuit had been filed or that one was imminent and the Plaintiff has alleged as much in his complaint.

**D.      The Plaintiff plausibly alleges that the Defendant violated § 1692g.**

Subsection 1692g(a) requires that a debt collector provide, in its initial communication with a consumer or within five days thereafter, a debt validation notice informing the consumer, among other things, that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*". 15 U.S.C. § 1692g(a)(3) (emphasis added).  While courts do not require that debt collectors quote the FDCPA verbatim, the § 1692g validation notice must be "conveyed effectively to the debtor".  *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991). *See also Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 813 (M.D.N.C. 2011).  Moreover, "in order to be effective, 'the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the

---

[2] Although undefined in any version of Black's Law or Merriam-Webster available to Plaintiffs' counsel, it is important to note that "legal action" is defined by one online dictionary as "a judicial proceeding brought by one party against another; one party prosecutes another for a wrong done or for protection of a right or prevention for a wrong." See http://www.thefreedictionary.com/legal+action (last visited October 28, 2013).

collection agency.'" *Miller*, 943 F.2d at 484 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).  *See also Dikun v. Streich*, 369 F. Supp. 2d 781, 786 (E.D. Va. 2005). Generally, a notice is "overshadowing and contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Creighton v. Emporia Credit Service, Inc.,* 981 F.Supp. 411, 416 (E.D. Va. 1997). Further, as one court explained:

> To be adequate, the "validation notice" must be placed in such a way to be easily readable, and must be prominent enough to be noticed by an unsophisticated consumer. The notice also must not be overshadowed or contradicted by other messages.  This standard is a stringent one. The analysis is not an objective inquiry into whether the language of the demand letter does overshadow and contradict the validation notice. I must instead decide whether the least sophisticated consumer would find the language contradictory or inconsistent so as to leave him confused about his right to dispute the debt.

*Talbott v. GC Servs. Ltd. P'ship*, 53 F. Supp. 2d 846, 852 (W.D. Va. 1999) (internal citations omitted).

Plaintiff's Complaint alleges that the Defendant violated § 1692g for failing to include this language that it is the *debt collector*, and no other entity, who will assume this debt to be valid.  *See* Pl.'s Compl. ¶¶ 26–28; 30; 33–39.  The Defendant's motion to dismiss this claim asserts that, although it did omit this language that it is the debt collector who will assume the debt to be valid, its language is not misleading to the least sophisticated consumer because it also includes additional language in the letter that the Plaintiff's failure to dispute the validity of the debt "may not be construed by any Court as an admission of liability".  *See* Def.'s Mem. Supp. Mtn. to Dismiss 10 (Docket No. 9).  However, the inclusion of the additional language does not cure the Defendant's deficiency in its § 1692g(a)(3) notice because Defendant's notice would still leave a consumer uncertain of her rights for several reasons. First, as more fully described below, a court and a debt collection agency are not the only two entities that are relevant for the purposes of the § 1692g(a)(3) notice.  Moreover, a person does not need to go to law school to

appreciate the legal significance between an assumption of validity and admission of liability. The meaning of the word "assume" is "to think that something is true or probably true without knowing that it is true."[3] This is entirely different from an "admission," which is defined as "an acknowledgement that facts are true." Black's Law Dictionary 20 (3rd Ed. 2001). Thus, even if the court was the only other entity that a consumer would consider when reading the § 1692g(a)(3) notice (which it is not), the terms are not mutually exclusive or even synonymous – a court could still assume the validity of the debt without acknowledging that it is valid. This may lead the least sophisticated consumer to believe that it has the burden of prove at trial that the debt is not valid. In reality, Defendant's omission of the term "by a debt collector" coupled with the additional inclusion regarding the "admission of liability" actually causes greater confusion then if the additional language was omitted altogether.

### 1. A Debt Collector and a Court Are Not the Only Two Entities That Are Relevant for the Purposes of the § 1692g(a)(3) Notice.

It is shocking that *Harlan*—a case ruling in favor of the plaintiff on a motion for judgment on the pleadings based on the omission of the language "by a debt collector"—is the only case cited by the Defendant in support of its argument that somehow including the "admission of liability" language cured its § 1692g(a)(3) deficiency. *See* Def.'s Mem. Supp. Mtn. to Dismiss 11. In *Harlan*, the court reasoned that the defendant's omission of the language "by a debt collector" could lead the least sophisticated consumer to believe that the failure to dispute the debt would create an assumption of validity "by a court ***or other entity of authority in a subsequent collection proceeding.***" 2011 U.S. Dist. LEXIS 12751, *11 (E.D. Pa. 2011) (emphasis added). And as the court noted, "of course, that interpretation is inaccurate. The

---

[3] *See, e.g.*, Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/assume (last visited October 31, 2013).

statutorily required validation notice is intended to convey to the consumer that failure to dispute the debt permits ***the debt collector*** to proceed for collection purposes on the '***temporary fiction***' that the debt is valid." *Id*. (emphasis added).

*Harlan* is not the case to consider this issue and acknowledge the confusion created by the omission of the phrase "by a debt collector" when providing the § 1692g(a)(3) notice. In a case directly on point with the present facts, a plaintiff alleged that the omission of the phrase "by the debt collector" or its equivalent rendered an attorneys' collection letter an ineffective validation notice because it would confuse the least sophisticated debtor as to who or what entity would assume[4] the debt to be valid. *Smith v. Hecker*, 2005 U.S. Dist. LEXIS 6598, 15* (E.D. Pa. 2005). The plaintiff further argued that the attorneys' collection letter did not alleviate this confusion by replacing the phrase "by a debt collector" with some other reference to "we" or "us" so that the least sophisticated consumer would have some clue as to who would assume the debt to be valid. *Id*. The court agreed with both of these arguments, finding: (1) that on its face the letter did not meet the requirements of § 1692g(a)(3); and (2) "[t]here was no other language in the entire letter that identifies the person or entity that will assume, or 'assess,' the debt to be valid. [The debt collector's] use of the words 'us,' 'we,' and 'our' in other parts of the debt validation notice does not connect with the verb 'assessed.' As a result, the least sophisticated debtor may be led to believe that unless she disputes the validity of the debt asserted by the debt collector, her debt will be determined to be valid by a court, credit report agency, or other entity of authority." *Id*. at 17-18.

---

[4] To be clear, the language used in the validation notice in *Smith* used the word "assess" instead of the word "assume." *Id*. However, this distinction did not make a material difference in the court's analysis of the § 1692g violation.

The courts' rationale in *Harlan* and *Smith* highlight the obvious flaw with Defendant's argument that the "admission of liability" language clarifies "any potential confusion that the assumption of validity may be by a Court." *See* Def.'s Mem. Supp. Mtn. to Dismiss 11. As recognized in *Smith*, a court is not the only other entity that a consumer could believe would assume the debt to be valid. For example, the assumption that the debt is valid may lead the least sophisticated consumer to refrain from disputing the debt when the information appeared on his credit report. Likewise, it may also lead the consumer to believe that the original creditor or servicer may assume that the debt is valid. Case law across the country has recognized that a court and the debt collector are not the only two entities that may be relevant for the purposes of the § 1692g(a)(3) notice. *See, e.g., Galuska v. Collectors Training Inst. of Ill., Inc.*, 2008 U.S. Dist. LEXIS 39508, at *5 (M.D. Pa. May 13, 2008) (finding failure to include "by the debt collector" or words such as "we" or "this office" in the required disclosure would lead least sophisticated debtor to believe the debt would be assumed valid by some other entity); *Orr v. Westport Recovery Corp.*, 2013 U.S. Dist. LEXIS 56222, at *5-6 (N.D. Ga. April 16, 2013) (finding that the consumer's right to dispute under § 1692g(a)(3) extends to judgments, not just prejudgment debts; therefore, regardless of whether the judgment may be assumed to be valid by the court or other authorities, the FDCPA requires the notice to expressly limit the assumption of the validity to only the debt collector); *Nelson v. Select Fin. Servs., Inc.*, 430 F. Supp. 2d 455, 457-458 (E.D. Pa. 2006).

As one court recently put it:

> The FDCPA requires that a validation notice specifically include 'a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*.' 15 U.S.C. § 1692g(a)(3) (emphasis added). Therefore, as other courts have held, 'the absence of the term 'by the debt collector,' or its equivalent

here, is a sufficient allegation [of an FDCPA violation] to survive the standard for a motion to dismiss.'

*Diaz v. Residential Credit Solutions, Inc.*, 2013 U.S. Dist. Lexis 61693 (E.D. NY April, 29, 2013).

Accordingly, the Court should deny Defendants' motion to dismiss.

**2. The Language Used Throughout the Letter, As a Whole, and Creates Further Confusion as to the Entities that May Assume the Debt is Valid.**

The confusion created by Defendant's omission of the phrase "by a debt collector" is only bolstered when the notice is read in its entirety because of the frequency in which Defendant used the term "this office" within the notice, but omitted such language from the sentence regarding the assumption of the validity of the debt. Specifically, the Letter, in relevant part, reads:

> If within thirty days from the receipt of this letter you fail to dispute all or part of the debt, the amount recited herein will be assumed as valid. If you notify ***this office*** in writing within the thirty (30) day period that the debt or any portion thereof is disputed, ***this office*** will obtain verification of the debt and a copy of such verification will be mailed to you. Upon your written request within the thirty (30) day period, ***this office*** will provide the name and address of the original creditor if different from the current creditor.

> If you notify ***this office*** in writing within the thirty (30) day period, that the debt or any portion thereof is disputed or request the name and address of the original creditor, ***we*** shall cease collection of the debt until we obtain verification of the debt or ascertain the name and address of the original creditor.

*See* Compl., Ex. A. The inclusion of "this office" and "we" in other contexts within the notice would further lead the least sophisticated consumer to believe that the debt would be assumed valid by other entities as well. *Philip v. Sardo & Batista, P.C.*, 2011 U.S. Dist. LEXIS 130267, 12* (D. N.J. 2011) ("the fact that the collection notice in this case uses the term 'this office' in numerous other places in the letter does not necessarily lead the least sophisticated debtor to believe that Defendant is the entity assuming the debt to be valid. In fact, the notice could be

read as confusing or misleading because of the fact that 'I' and 'this office' was used so frequently in other contexts within the notice but not used after the clause regarding the assumption of the validity of the debt."); *Smith*, 2005 U.S. Dist. LEXIS 6598 at *17-18 (There is no language in the entire letter that identifies the person or entity that will assume, or "assess," the debt to be valid. The debt collector's use of the words "us," "we," and "our" in other parts of the debt validation notice does not connect with the verb "assessed.").

Moreover, the statement in Defendant's dunning letter that "Branch Banking and Trust Company has referred the loan to [Rosenberg & Associates, LLC] for legal action" coupled with the statement that Plaintiff's "failure to contest the validity of the debt under the Act may not be construed by any Court as an admission of liability" leaves the Plaintiff, and other consumers, with an uncertainty as to who will thus assume the debt to be valid if not the court. In turn, this language is inconsistent or at the very least "make[s] the least sophisticated consumer uncertain as to her rights". *Creighton v. Emporia Credit Service, Inc.*, 981 F.Supp. 411, 416 (E.D. Va. 1997).

Regardless, Plaintiff's Complaint plausibly pleads that the Defendant's failure to include that the debt will be assumed to be valid "by the debt collector" leaves the consumer with an uncertainty about what entity will make the assumption and for what purpose, and thus is a violation of the FDCPA.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss should be denied.

Respectfully submitted,
**CLAUDIO FARIASANTOS**


By_____/s/Leonard A. Bennett_____
        Of Counsel


Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com
srotkis@clalegal.com

Matthew J. Erausquin, VSB No. 65434
Janelle Mason Mikac, VSB No. 82389
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
janelle@clalegal.com
casey@clalegal.com

Dale W. Pittman, VSB No. 15673
*Counsel for the Plaintiff*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Tel:    (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

Kristi Cahoon Kelly, VSB No. 72791
Andrew J. Guzzo, VSB No. 82170
*Counsel for the Plaintiff*
SUROVELL, ISAACS, PETERSEN & LEVY, PLC

4010 University Drive, Suite 200
Fairfax, VA 22030
Tel:     (703) 277-9774
Fax:     (703) 591-9285
kkelly@siplfirm.com
aguzzo@siplfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2013, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch, VSB No. 39267
Maryia Y. Jones, VSB No. 78645
Counsel for Rosenberg & Associates, LLC
Troutman Sanders LLP
222 Central Park Ave., Ste. 2000
Virginia Beach, VA 23462
Tel. 757-687-7765
Fax. 757-687-1504
Email: john.lynch@troutmansanders.com

*Counsel for the Defendant*

_____/s/_____
Leonard A. Bennett, VSB No. 37523
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@clalegal.com
