IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLAUDIO FARIASANTOS, *on behalf of* :
*Himself and all others similarly situated,* :
                      :
    Plaintiff, :
         v. :      Civil Action No. 3:13-cv-543
                      :
ROSENBERG & ASSOCIATES, LLC :
                      :
    Defendant. :

## MEMORANDUM IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Claudio Fariasantos, individually and on behalf of all others similarly situated, moves the Court for class certification on behalf of a defined class of consumers claiming a violation of the Fair Debt Collection Practices Act against Defendant, Rosenberg & Associates, LLC. Plaintiff submits this Memorandum of Law in support for his request for class certification.

## I.      INTRODUCTION

This case arises from Rosenberg & Associates, LLC's ("Defendant" or "Rosenberg") uniform, routine practices of mailing consumers a form collection letter that made false and unintended threats to file civil actions in court in connection with the collection of home loan debts. This misrepresentation was compounded by the fact that the letters also did not appropriately disclose the Fair Debt Collection Practices Act's ("FDCPA") cornerstone thirty-day-validation-rights notice found at 15 U.S.C. § 1692g. Defendant does not contest that class certification is appropriate in this case—in fact, it has filed its own motion for class certification. For the purposes of this motion, the only outstanding issue between the parties is the scope of the class definition and putative class membership. Defendant has admitted—in both its class

certification motion, as well as its discovery responses—that all of the requirements of class certification are met for the class defined in Plaintiff's original complaint. Plaintiff has sought leave to file an amended complaint, which only makes one change to the class definition—instead of seeking a Virginia-wide class, Plaintiff now seeks to certify a class of Henrico County residents:[1]

> (A) All residents of Henrico County, Virginia to whom Defendant sent a letter in the form of Exhibit A, (B) which contains the 15 U.S.C. § 1692g notice of validation rights in text identical to that in Exhibit A, (C) in an attempt to collect a home loan debt, (D) that was incurred primarily for personal, household or family purposes, (E) during the one year period prior to the filing of the Complaint in this matter.

Therefore, the only material issue presented by this motion is whether or not this smaller class meets Rule 23's numerosity requirement. Defendant admits that the form letter was mailed to at least 83 consumers in Henrico County, Virginia. As discussed below, this is clearly a sufficient number of class members such that joinder is impracticable.

---

[1] Plaintiff has narrowed the proposed class definition to comport with the narrowing of this case after discovery. Of course, regardless of what is alleged as a proffered class definition in a complaint or in this motion, the Court is free to define the class as it finds more appropriate. *Bratcher v. Nat'l Standard Life Ins. Co.* (*In re Monumental Life Ins. Co.*), 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S. Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination."). *See also Woods v. Stewart Title Guar. Co.*, Civil No. CCB-06-0705, 2007 WL 2872219, at *2 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group of individuals harmed by the same practice alleged in the complaint).

## II.     BACKGROUND OF THE CASE

### A.     Factual Allegations

The relevant facts in this case are simple and undisputed—Defendant mailed form letters to Plaintiff and putative class members that had the potential to create confusion for the least-sophisticated consumer for two reasons. First, the form letters stated that the servicer of the mortgage loan had "referred to loan to [the Defendant] for legal action," implying that the Defendant would file a lawsuit against the debtor during the foreclosure, when it had no intention of or ability to do so. Second, the letters failed to contain a notice that a consumer's failure to contest the debt would be viewed by the debt collector as an admission of liability, but would not be viewed as an admission of liability by a court or any other third party.

### B.     Plaintiff and the Putative Class Claims Establish the Elements of the FDCPA

Although § 1692g enumerates five distinct disclosures that must be provided to consumers, this case is only concerned with the third element, which requires that the debt collector to send the consumer a written notice containing "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid *by the debt collector*." 15 U.S.C. § 1692g(a)(3) (emphasis added). The Plaintiff has also alleged that the Defendant violated 15 U.S.C. § 1692e(5), which prohibits a debt collector from making a threat to take any action that cannot legally be taken or that is not intended to be taken, and 15 U.S.C. § 1692e(10), which prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

In order to prove a *prima facie* FDCPA violation, a plaintiff must establish that: (1) plaintiff is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt

is a "debt collector" within the meaning of the statute; and (3) the defendant violated by act or omission a provision of the FDCPA. *See, e.g.*, *Creighton v. Emporia Credit Servs.*, *Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997). Defendant does not contest the first two of these allegations and elements, and in fact has admitted that Plaintiff is a consumer, as well that it was a debt collector to the extent that a foreclosure is considered debt collection in the Fourth Circuit. *See* Ex. 1, Def.'s Third Supp. Resps. to Plt.'s First Set of Discovery, at 2. While Defendant does not yet admit that its form notices and conduct violated the FDCPA, the Court has effectively made that determination when it denied Rosenberg's Motion to Dismiss and held that Plaintiff has stated a claim for violations of Sections 1692e and g. (ECF No. 30). However, Defendant does admit and stipulate that the forms and conduct that the Court found violative of the FDCPA were uniform across the class of consumers alleged in the original complaint. Def. Mem. in Support of Def. Motion for Class Cert., ECF No. 38, at 4. (*See also* ECF No. 38 at 10. ("In this case, all class members were sent the same form letters by Rosenberg that used the "legal action" language and omitted the "by the debt collector" language."))

## III.    ARGUMENT

### A.    The Class Certification Standards

While the Court must undertake the 'rigorous' analysis required under Supreme Court precedent, it should "nevertheless [be] mindful of our court of appeals' admonition that Rule 23 should be accorded a liberal construction 'which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003) (quoting *In re A.H. Robins,* 880 F.2d 709, 740 (4th Cir. 1989)); *see also Coleman v. Union Carbide Corp.*, CIV.A. 2:11-0366, 2013 WL 5461855, at *1 (S.D. W. Va. Sept. 30, 2013). Federal courts have long regarded consumer claims,

including FDCPA "form letter" cases, as particularly appropriate for class resolution. *See Bicking*, 2011 WL 5325674, at * 2 (certifying an FDCPA class based on standard dunning letters sent to consumers); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Mexican Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395–96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding this case any differently.

As the Fourth Circuit has recently summarized:

[A] rigorous analysis into the Rule 23(a) and Rule 23(b)(3) requirements will clearly contain the following elements. **First**, a district court must decide whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). **Second**, a district court must determine whether even a *single* question of fact or law is common to the class. Such questions will depend on a "common contention," the resolution of which will resolve "an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 131 S. Ct. at 2551; *see also Ross,* 667 F.3d at 908–10 (7th Cir. 2012). **Third**, a district court must determine whether the claims (or defenses) of the representative parties are typical of those of the class as a whole by comparing the claims of the representatives with the claims of the absent class members and determining whether they tend to advance the same interests. *See Deiter*, 436 F.3d at 466–67. **Fourth**, a district court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Finally, [**Fifth**] if seeking class certification pursuant to Rule 23(b)(3), a district court must determine whether common questions of law or fact predominate over individual questions such that a class action is the superior method for resolving the controversy. This separate inquiry will require a district court to balance common questions among class members with any dissimilarities between class members. *See Gunnells,* 348 F.3d at 427–30. [**Sixth**] If satisfied that common questions predominate, a district court should then also consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior. *See, e.g.*, *Stillmock,* 385 Fed. App'x. at 273–75.

*Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 307–08 (4th Cir. 2013); *see also* Fed. R. Civ. P. 23(b)(3). Plaintiff addresses each Rule 23(a) and Rule 23(b)(3) element in turn.

**B. Certification is Appropriate, As All Four Rule 23(a) Prerequisites are Satisfied**

**1. Numerosity is satisfied.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). Where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News Gen'l & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (finding that 18 class members was sufficient to fulfill the numerosity requirement); *see also Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (seventy-member class was sufficiently numerous); *Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763 (8th Cir. 1971) (twenty-member class was sufficiently numerous); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51 (N.D. Ill. 1996) (eighteen-member class was sufficiently numerous); *Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) (twenty-nine-member class was sufficiently numerous); *Fidelis Corp. v. Litton Indus., Inc.*, 293 F. Supp. 164 (S.D.N.Y. 1968) (thirty-five to seventy-member class was sufficiently numerous); A. Conti and H. Newberg, 3 *Newberg on Class Actions* § 3:05 (4th ed. 2002) (at forty members, a presumption of numerosity should arise). The court may make common sense assumptions in order to find support for numerosity. *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir. 1983); *Hewlett v. Premier Salons Int'l, Inc.,* 185 F.R.D. 211, 215 (D. Md. 1997).

> Where class numerousness information is not available . . . it may be assumed that joinder is impracticable if common sense or judicial notice of facts would reasonably support that assumption. Similarly, where the exact size of the class is unknown, but it is general knowledge of common sense that it is large, the court will take judicial notice of this fact and assume joinder is impracticable.

A. Conti and H. Newberg, 3 *Newberg on Class Actions* § 7:22 (4th ed. 2002) (footnotes omitted).

Here, Defendant admits that a class limited to the Plaintiff and other Henrico County consumers would have 83 class members.  Ex. 2, Letter from John Lynch to Dale Pittman, et al., June 27, 2014.  Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met.  *See Cypress*, 375 F.2d at 653 (finding that a class of 18 members easily satisfied Rule 23(a)(1)'s numerosity requirement).

Further, certainly class membership is ascertainable and class members are easily identified.  Defendant has testified that it provided its defense counsel a complete class list with full names and addresses.   As Defendant has acknowledged, "The discovery in this case confirms that the class membership is ascertainable and Rosenberg has already identified the class members who were sent the form FDCPA letters during the relevant class period. Therefore, no ascertainability problem exists in this case, and the numerosity requirement is satisfied." (ECF No. 38 at 8).

### 2. Commonality is Satisfied Because the Class Claim Arises From The Application of Identical Statutory Provisions to Standardized Conduct.

"Rule 23(a)(2) requires that the court find that 'that there are questions of law or fact common to the class,'" but complete identity of fact or law questions is not necessary. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) *aff'd,* 6 F.3d 177 (4th Cir. 1993).  "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Comm'n Workers of Am., AFL-CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003).   More recently, the Fourth Circuit has restated the standard for commonality, based upon the Supreme Court's clarification of the concept:

> Commonality is generally established when a Plaintiffs' claims have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff

must "demonstrate that the class members 'have suffered the same injury,' " *Wal–Mart Stores, Inc., v. Dukes,* ——U.S. ——, ——, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.*

*Gray v. Hearst Commc'ns., Inc.*, 444 F. App'x 698, 700–01 (4th Cir. 2011). "Rule 23(a)(2) 'does not require that all, or even most issues be in common.' A single common question will satisfy Rule 23(a)(2)'s commonality requirement." *Adair v. EQT Prod. Co.*, 1:10-CV-00037, 2013 WL 5429882, at *35 (W.D. Va. Sept. 5, 2013) *report and recommendation adopted as modified sub nom. Hale v. CNX Gas Co., Inc.*, 1:10CV00059, 2013 WL 5429901 (W.D. Va. Sept. 30, 2013) (internal citations omitted).

"Courts have previously found common questions of law or fact sufficient to certify a class where FDCPA plaintiffs alleged the receipt of the same or similar collection letter as the basis of the lawsuit." *Marcarz v. Transworld Sys., Inc.,* 193 F.R.D. 46, 49 (D. Conn. 2000). (citing *Savino*, 173 F.R.D. at 352; *Avila v. Van Ru Credit Corp*., No. 94 C 3234, 1995 WL 41425, at *11 (N.D. Ill. Jan. 31, 1995). To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter. *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 668 (M.D. Fla. 1999). "The very definition of this class logically involves common questions, such as whether the subject letter violates 15 U.S.C. §1692g." *Marcarz,* 193 F.R.D.at 49.[2] Recently, in *Bicking v. Law Offices of Rubenstein & Cogan,* this Court reasoned:

> Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. *Cf. Talbott v. GC Svcs. Ltd. P'ship,*

[2] *See also Vega v. Credit Bureau Enters.*, Civil Action No. 02-CV-1550, 2005 U.S. Dist. LEXIS 4927, at *8–9 (E.D.N.Y. Mar. 29, 2005) ("where FDCPA plaintiffs have received similar debt collection letters from the defendant['s] mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." (citing *Harrison v. Great Springwaters of Am.*, No. 96-CV-5110, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997)).

> *191 F.R.D. 99, 103 (W.D. Va. 2000)* ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."). The sole and dispositive legal question is whether the Verification Notice violates the FDCPA.

*Bicking*, 2011 WL 5325674, at *2. Like *Bicking*, *Swanson*, and *Marcarz*, the common characteristic of the class members here is that they received an FDCPA letter that contained the same defective § 1692g disclosure and same threat to take unintended "legal action." "This standardized conduct weighs heavily in favor of a finding of commonality." *Marcarz*, 193 F.R.D. at 50; *see also D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996).

Critically, the common questions in this case can be resolved with reference to standardized conduct and documents, making them particularly susceptible to class treatment. *In re Checking Account*, 2012 WL 3265093, at *4 ("The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'"). Since the claims of all class members derive from the same form FDCPA Letters and firm-wide methods and procedures implemented by the Defendant, commonality's low threshold is easily satisfied for Plaintiff's proposed class. Additionally, "Rosenburg does not contest that the commonality requirement is met because the claims of all class members derive from the form FDCPA Letters with identical disclosures." (ECF No. 38 at 8). In addition to this representation in its own class certification motion, Defendant has not made any serious efforts to dispute commonality in its responses to Plaintiff's discovery on this issue. In particular, throughout Defendant's Third Supplemental Responses to Plaintiff's First Set of Interrogatories, Rosenburg states that it does not contest that Plaintiff's action meets Rule 23(a)'s commonality requirements. *See* Ex. 1.

**3.      Typicality is Met Because Plaintiff's Claim are Typical of Those of the Members of the Class He Proposes to Represent**

As the Fourth Circuit has explained, typicality 'involve[s] a comparison of the plaintiffs' claims or defenses with those of the absent class members. To conduct that analysis, [the District Court] begin[s] with a review of the elements of [the plaintiff's] *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006)). The typicality test involves analyzing whether other class members have suffered the same or similar injury, whether the action is based upon conduct that has been repeated on other individuals besides the named plaintiffs, and whether the defendant's same course of conduct has caused injury to other class members. *In re Checking Account*, 2012 WL 3265093, at *5. Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5. As the Fourth Circuit panel explained in *Soutter*:

> The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" While Soutter's claim need not be "perfectly identical" to the claims of the class she seeks to represent, typicality is lacking where "the variation in claims strikes at the heart of the respective causes of action."
>
> To determine if Soutter has shown typicality, we compare her claims and Equifax's defenses to her claims with those of purported class members by reviewing the elements of Soutter's prima facie case and the fact supporting those elements and examining "the extent" to which those facts "would also prove the claims of the absent class members."

*Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012) (internal citations omitted).

In this case, Plaintiff's claims are not merely coextensive with the claims of Class Members, they are *identical* to them. By receiving the same form letter as the Class Members that uniformly omitted the escrow charges, Plaintiff suffered the same injury as that suffered by other class members. There is nothing special or unique about the Plaintiff's claims. They arise from the same uniform conduct of Rosenberg as the absent Class Members'. This conduct, if proven to violate the FDCPA provisions as alleged, was the same to all Class Members as it was to Plaintiff. Under such facts, typicality is satisfied. *See In re Checking Account*, 2012 WL 3265093, at *7 (finding typicality met where plaintiffs challenged banks' uniform policy of rearranging debit transactions to cause class members to incur more overdraft fees); *Marcarz*, 193 F.R.D. at 50, 51 ("As to the typicality prong, the Court agrees with plaintiff that Mr. Macarz' claim satisfies this requirement, in that by receiving the same letter, he suffered the same injury as that suffered by other members in the class, and defendant has not identified any aspect of his claim that is atypical or would be subject to unique defenses."). Furthermore, Defendant has stipulated that typicality is met "because all of the class members were sent the FDCPA Letters that contained the identical language at issue in this case. (ECF No. 34; *see also* Doc. No. 38 at 9).

4.      **Adequacy of Representation is Met Because Plaintiff Has No Antagonism to Class Members and His Counsel is Willing and Able to Prosecute This Case.**

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite is met when: "(i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case." *In re Checking Account*, 2012 WL 3265093, at *7. A class representative must be part of the class, possess the same interest, and suffer the same injury as the class members. *E. Tex. Motor Freight Sys. Inc. v.*

*Rodriguez*, 431 U.S. 395, 403 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

Given the identical nature of the claims between the Plaintiff and the class members, no potential exists for conflicting interests in this action. Here, there are no conflicts between Plaintiff and the absent class members. It certainly cannot be said that Plaintiff suffered a different injury than the class members—all injuries are identical under the FDCPA's statutory scheme and all of Rosenburg's conduct was uniform and automatic.

Plaintiff also retained counsel qualified to prosecute this case in favor of the Class. Plaintiff's lead counsel have effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *See generally* Ex. 3, Decl. of Leonard Bennett. As Judge Payne recently stated, "the Court finds that Soutter's counsel [Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases." *Soutter v. Equifax Info. Services*, LLC, 3:10CV107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011) *rev'd on other grounds*, 498 F. App'x 260, 264 (4th Cir. 2012). Further, the present team proposed as class counsel has recently been commended by this Court in several cases.[3] Finally, Defendant affirmative argues that Plaintiff is an adequate

_____

[3] *See Tsvetovat, v. Segan, Mason, & Mason, PC,* Civ. Action No. 1:12-cv-510, Settlement Hr'g Tr. 26:8-16, April 12, 2013 (stating "And again, I want to compliment counsel on making the effort to settle this matter, and to have succeeded. I think it's a sensible, reasonable settlement."); *Conley v. First Tennessee Bank*, Case No. 1:10-cv-1247 (E.D. Va. 2010) *See* Settlement Hr'g Tr. 8:20-22; 10:14-22, Aug. 11, 2011. (Judge Ellis stated "I think you're to be commended. Most class counsel are a little greedy sometimes. But this fee is anything but that . . . Again, I wish that more would settle as quickly and as sensibly and as economically as you-all have settled this. Thank you . . . And that thank you comes not from me personally, but from the system, from the judiciary. We're tied up with lots of class actions, lots of squabbling, and it's refreshing to see one resolved so promptly.")

class representative and that Plaintiff's counsel is not competent to serve as class counsel. (*See* ECF No. 38 at 9).

**C.  The Classes Also Satisfy the Requirements of Rule 23(b)(3), Making Certification Appropriate**

**1.  Common Questions Predominate Because the Class Claim Arises From a Common Nucleus of Fact and Involves Overriding Common Questions**

"Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'" *Thorn,* 445 F.3d at 319 (internal citation omitted) (quoting Fed. R. Civ. P. 23(b)(3)). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (internal citation and quotation marks omitted).

The U.S. Supreme Court explained "predominance is a test readily met in certain cases alleging consumer or securities fraud . . ." *Amchem*, 521 U.S. at 625. In this case, all class members were sent the same form letters by Rosenberg containing the same "legal action" language and defective 1692g notice. Cases dealing with the legality of standardized documents and practices are generally appropriate for resolution by class action because the document is the focal point of the analysis. *Swanson,* 186 F.R.D. at 668. Because of the standardized nature of the Defendant's conduct, common questions predominate. These common questions include:

1.  Whether Rosenberg is a "debt collector" within the meaning of the FDCPA;

2.  If so, whether Rosenberg sent form letters in compliance with the disclosure requirements of § 1692g(a)(3);

3.  Whether Rosenberg's letter threatened to file a civil action in court in connection with the collection of a home loan debt when it had no intention of doing so; and

4. Whether Rosenberg's form language constituted deceptive practices or contained language that would create a false impression that would mislead the least sophisticated consumer.

As demonstrated above, these elements are subject to common, generalized proof because the correspondences are form documents. Simply put, the same language is printed within each form letter and will not vary by case or account. As to the first question, it cannot be reasonably disputed that Rosenberg is a debt collector. Questions two and three can be shown simply with generalized, classwide review of the FDCPA letters that were sent to the consumers. The fourth question is also subject to common, generalized proof because the least sophisticated consumer standard is an objective standard. *Nat'l Fin. Servs.*, 98 F.3d at 135–36. Whether Plaintiff or class members were misled is not an element of this cause of action. "The test is the capacity . . . to mislead; evidence of actual deception is unnecessary." *Id.* The question is not whether the plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 392 (D. Del. 1991); *cf. Morgan v. Credit Adjustment Bd.,* 999 F. Supp. 803, 805 (E.D. Va. 1998) (holding that FDCPA liability does not require showing that consumer read or receive the dunning letter). Thus, since no individualized proof whatsoever is needed to establish Plaintiff's claims, the predominance requirement is readily met.

2. **Litigation for and Certification of the Narrowed Class is the Superior Method of Litigating.**

In the final step of its analysis for class suitability, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615. Superiority "'depends greatly on the circumstances surrounding each case,' but '[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.'" *Stillmock v. Weis Markets, Inc.*, 385 F.

App'x 267, 274 (4th Cir. 2010) (quoting 7A Wright, Miller & Kane, *supra*, § 1779). "In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy . . . and to assume the risk of prejudice'" to putative class members not before it. *Id.; Soutter v. Equifax Info. Services, LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011). The factors to be considered in determining the superiority for the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy presented. *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (*citing Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972)). In examining these factors, courts properly consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974). "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee Note to 1996 Amendment to Rule 23; *see In re Checking Account*, 2012 WL 1134483, at *11 (finding superiority met where "[n]early all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual

case than they could ever hope to recover in damages . . .”). Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.

FDCPA statutory damage cases, like this one, are ideally suited for class certification, because of the uniform, but limited, recoveries sought under a complex statute. *See Bush v. Calloway Consol. Group River City, Inc.*, No. 3:10-cv-841-J-37MCR, 2012 WL 1016871, at *11 (M.D. Fla. March 26, 2012) (“Courts routinely find class resolution superior in consumer protection actions”). “The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” *Id.* (quoting *Amchem*, 521 U.S. at 617). Federal courts have long regarded “consumer claims” as “particularly appropriate for class resolution.” *Id.*; *see Amchem*, 521 U.S. at 625; *In re Mexican Money*, 267 F.3d at 747; *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate. 15 U.S.C. § 1692k. Likewise, the absence of any competing classes or other individual claims suggests that without the certification of this case as a class, it is unlikely that the class members would obtain any form of relief. Class members are likely unaware of their FDCPA rights or that Rosenberg violated those rights in the first place. Unless the Court certifies this Class, it is highly probable that the class members will receive no relief of any kind.

The only dispute that remains possible as to class certification is the propriety of Plaintiff seeking to obtain certification of a narrower class than that originally suggested and now sought by Defendant. Rosenberg asks the Court to certify a class of 2,332 consumers, to divide what is a modest recovery fund. (ECF. No. 38 at 11). Defendant eagerly suggests that this choice is—

in its eye—superior to the alternative of individual litigation or certification of a more modest and reasonable class.   But Plaintiff and his counsel do not agree.[4]

Plaintiff and putative class counsel seek to represent a class of consumers—of strangers—and they ask to do so by representing to the Court their intentions to best serve class member interests.   In the view of Plaintiff and his counsel, it would not be in the best interest of 2,332 consumers to force them into a class with a likely recovery of less than $10.00 when there are superior alternatives.   Plaintiff proposes instead to represent a narrower class limited to the uniformly treated consumers who, like Mr. Fariasantos, resided in Henrico County.   The foreclosures threatened for each such class member would have been handled in an identical manner, using the same third party collection subcontractor to sign deeds and process foreclosure sale.   The timing of the advertisements for the sales would have been uniform.   And of course, all such class members would be close to one another and to the Court.   And a capped fund of money divided by 83 will be more effective and fair to class members than dividing that same pool amongst 2,332.

Defendant's complaint has been that such an approach would be unfair to it as it would permit later piecemeal class litigation.   Alternately, Rosenberg could attempt the argument that the FCPA ceiling of $500,000 or 1% of the Defendant's net worth should apply to its entire FDCPA exposure, rather than on an action-by-action, case-by-case basis.   In both regards it would be incorrect and would be suggesting positions that at least since 1997 have been uniformly rejected across the country.   *See Mace v. Van Ru Credit Corp*., 109 F.3d 338 (7th Cir. 1997).

---

[4] By agreement and the Court's scheduling order, Plaintiff will substantively answer Defendant's Motion for Class Certification by later pleading.

In *Mace v. Van Ru Credit Corp*., 109 F.3d 338 (7th Cir. 1997), the Seventh Circuit found nothing in § 1692k that precluded certification of a geographically narrowed class or that imposed a single damages cap upon a series of such actions. The Seventh Circuit reached this conclusion largely by contrasting the FDCPA damages cap provision, § 1692k(a)(2)(B)(ii), with the damages cap in the related Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(a)(2)(B). The TILA caps damages "in any class action **or series of class actions** " (emphasis added)— language conspicuously absent from § 1692k(a)(2)(B)(ii). *See Mace*, 109 F.3d at 342–43 (declining to read the TILA provision into the FDCPA). *Mace* accordingly reversed the district court, which had held that "if the damage cap of $500,000 can be applied anew to a series of state-wide (or otherwise limited) class actions, the damage limitation would become meaningless." *Id.* at 344. Three years after *Mace*, the Seventh Circuit reiterated this conclusion in *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000), stating that "there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit, which is exactly what happened to the defendant in this case."

Since these decisions, not one court known to Plaintiff's counsel has found otherwise— each permitting various narrowed class permutations—limited by state or locality, time period, creditor or otherwise. "In the wake of *Mace*, however, courts have allowed multiplicative class actions with both chronologically distinct classes. The defendants have found no cases holding that § 1692k(a)(2)(B)(ii) requires certification of a nationwide class." *LaRocque ex rel. Spang v. TRS Recovery Servs., Inc*., 2:11-CV-91-DBH, 2013 WL 30055 (D. Me. Jan. 2, 2013) (internal citations omitted). In fact, geographically limited FDCPA class definitions permit more meaningful participation by a localized class. *Diaz v. Residential Credit Solutions, Inc*., 297 F.R.D. 42, 53–54 (E.D.N.Y. 2014) (Geographic limitations of class is proper as easier to manage

and better assists localized class members in participation in class trial); *Macarz v. Transworld Systems, Inc*. 193 F.R.D. 46, 57 (D. Conn. 2000) ("[T]he Court will not decline certification simply because plaintiff seeks to limit the class to a specific geographic area. Such a class will be more easily managed by this Court, and to the extent testimony of individuals is needed in the damages phase, concentrating the litigation in this District will assist Connecticut residents who might otherwise be unwilling to travel to distant fora for a relatively small sum."); *Mailloux v. Arrow Fin. Servs., LLC*, 204 F.R.D. 38, 43 (E.D.N.Y. 2001) (same).

Defendant's previously stated objection to the local class has been uniformly rejected as an ineffective complaint about the text of the statute itself.   As the Northern District of Illinois has explained:

> Defendant argues that Plaintiff has manipulated the class definition in order to maximize the amount each class member will receive under the cap. … Plaintiff candidly admits that the two proposed classes are designed to increase Northland's liability, but argues that its course of action is not only permissible under the FDCPA, but necessary. … This court concludes that neither the FDCPA nor Rule 23 require a larger class than Plaintiff proposes to certify. … Although Northland couches its argument in terms of Rule 23's "superiority" requirement, it is really an argument predicated on a reading of the FDCPA that the plain language of that statute does not support.

*Nichols v. Northland Groups, Inc*., 2006 WL 897867 (N.D. Ill. Mar. 31, 2006) (citations omitted). See also *Borcherding-Dittloff v. Transworld Sys., Inc*., 185 F.R.D. 558, 566 (W.D. Wis. 1999) (Rejecting objection to geographically limited class definition despite defense argument that this would "leave the door open for a series of class actions against defendant[.]");  *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 455 (E.D.N.Y. 1996) ("The Court agrees with the view that an FDCPA class need not include all potential plaintiffs and may be limited geographically consistent with the legislative intent of the FDCPA … The Court finds that the plain meaning of

the FDCPA does not prohibit the certification of a class in which less than all potential plaintiffs are included.")

Not only are the Plaintiff and putative class counsel permitted to pursue a capped claim with a narrowed class definition, but arguably they would be inadequate if they failed to do so. Multiple FDCPA settlements have been rejected for just such a failure. In a case before the District of New Jersey, the Court found:

> Given the unsettled nature of FDCPA jurisprudence, the Court will not approve the proposed settlement. If there is even a fair possibility that consumers in other states can obtain a monetary recovery from defendant arising from the collection letters defendant sent out from August 6, 2008 to the present, they should have the right to pursue their claims. The phantom benefit from the proposed settlement is not adequate consideration for the release of tens of thousands of potential FDCPA claims.

> Defendant argues that a nationwide class is necessary to prevent it from being subject to "copycat class actions in other jurisdictions, exposing it to potential liability in excess of the absolute limit set by Congress." July 8, 2010 JLB at 3. The Court disagrees. For the reasons already discussed, defendant's collective nationwide exposure may not be absolutely capped at 1 percent of its net worth. Further, the Court agrees with the view that an FDCPA class does not have to include all potential plaintiffs.

*Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912 (D.N.J. Jan. 10, 2011). *See also Brink v. First Credit Res.*, 185 F.R.D. 567, 573 (D.Ariz.1999) (concluding that a geographically unlimited class "would be a disservice to the potential plaintiffs because the group as a whole might obtain a larger total recovery by maintaining several class actions rather than only one").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion and certify the Class defined above.

Respectfully submitted,
**CLAUDIO FARIASANTOS**

By_____/s/_____
                        Of Counsel

Leonard A. Bennett, Esq. (VSB #37523)
Susan Rotkis, Esq. (VSB #40639)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com
E-mail: srotkis@clalegal.com

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-9285 - Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

Matthew J. Erausquin, VSB #65434
Casey S. Nash, VSB #8461
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 273-7770
(888) 892-3513 (Fax)
matt@clalegal.com
casey@clalegal.com

Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2014, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch, VSB No. 39267
Maryia Y. Jones, VSB No. 78645
*Counsel for Rosenberg & Associates, LLC*
Troutman Sanders, LLP
222 Central Park Ave., Ste. 2000
Virginia Beach, VA 23462
Tel:    757-687-7765
Fax:    757-687-1504
John.lynch@troutmansanders.com
Maryia.jones@troutmansanders.com


                                         _____/s/_____
                                         Leonard A. Bennett, Esq. (VSB #37523)
                                         CONSUMER LITIGATION ASSOCIATES, P.C.
                                         763 J. Clyde Morris Boulevard, Suite 1-A
                                         Newport News, Virginia 23601
                                         (757) 930-3660 - Telephone
                                         (757) 930-3662 – Facsimile
                                         E-mail: lenbennett@clalegal.com