**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

**CLAUDIO FARIASANTOS,** *on behalf of* )
*himself and all others similarly situated,* )
                                                        )
                              **Plaintiff,**        )
        **v.**                                       )          **Civil Action No. 3:13-cv-543**
                                                        )
**ROSENBERG & ASSOCIATES, LLC,**   )
                                                        )
                              **Defendant.**       )
_____)

**REPLY IN SUPPORT OF PLAINTIFF'S**
**OBJECTION AND MOTION TO STRIKE**
**DECLARATION OF DIANE ROSENBERG AND EVIDENCE OF NET WORTH**
**PURSUANT TO RULE 56(c)(4) AND RULE 37(c)(1)**

The Defendant argues that there is not a scintilla of evidence that it is worth more than $1,811,374 and that the Plaintiff has falsely represented that Defendant embargoed evidence of its net worth.  The Plaintiff's argument is simple:  (1) the Defendant cherry-picked information regarding its net worth limited to summaries, spreadsheets, database output, statements and an unreliable accountant's report, and refused to supply evidence sought by the Plaintiff in order to discover its net worth; (2) the Defendant's Declarant is not a proper witness to testify about the Defendant's net worth because the Declaration is not based on authenticated and admissible evidence, it purports to establish facts about which the Declarant is not competent to testify, and was not properly disclosed in any of the Defendant's mandatory disclosures; (3) the Plaintiff resorted to the remedies available during the discovery period, including propounding proper discovery, instigating and following up by meeting and conferring on discovery disputes on multiple occasions, seeking stipulations, issuing subpoenas to third parties, examining the Defendant's Rule 30(b)(6) witness, and moving to compel.  When the Defendant failed and

1

refused to provide the financial information that the Plaintiff could examine, test and subject to verification, the Plaintiff made a strategic choice after following the prescribed method of obtaining discovery, to seek to exclude the evidence that hasn't been produced in discovery and the witnesses and testimony that were never identified in the Defendant's mandatory disclosures. If the Defendant seeks to limit its liability to $500,000.00 or 1% of its net worth, it is the Defendant's obligation to put forward admissible evidence that so establishes that net worth.

Defendant urges the Court to allow the fox to guard the henhouse when it comes to the net worth question, which is a critical question in this matter.  Mr. Fariasantos offers the following reply memorandum of law in support of his objection and motion to strike.  This motion is timely. The Plaintiff has timely filed his motion objecting to the Rosenberg Declaration, requesting that it be excluded from consideration on Defendant's dispositive motions, and to otherwise exclude reliance by Defendant at this late date on documents, witnesses and evidence it did not disclose pursuant to Fed. R. Civ. P. 26(a)(1) and (e).

## Overview

Rosenberg is not competent to testify about the Defendant's net worth because she does not meet the requirements of Federal Rule of Evidence 701.  It is evident that despite the Defendant's claim that it has produced all the financial net worth documents requested by the Plaintiff and required by the court for the year preceding the filing of the action that, in fact, the Defendant has produced over and over again the same summaries, spreadsheets and reports instead of the foundational financial documents Plaintiff has sought in discovery, subpoenaed from third parties, and has even been ordered by the Court.  The Defendant has not answered the Plaintiff's interrogatories seeking information about how it arrived at its net worth calculation. The Defendant has not produced documents in response to Plaintiff's requests nor has it said that

such documents don't exist.  The Defendant has not identified its third-party accounting firm as a witness – either fact or expert.  The Defendant has not identified its employees or the business records that were used to create the summaries and reports it now attempts to use on dispositive motions.  The Defendant's corporate witness testimony demonstrates that she did not handle the day to day accounting in her firm, nor did she understand accounting matters that were handled by outside accountants.

**I.  Net Worth Evidence is unreliable and inadmissible.**

**1.  Net Worth must be calculated according to an accepted method of accounting or accounting principles and subjected to the same or similar scrutiny as federal courts subject other litigants' net worth calculations.**

The Defendant has not described what accounting principles it used in creating the spreadsheets, summaries, database outputs or reports that it relies on it its net worth calculation. The Fair Debt Collection Practices Act limits a debt collector's civil liability in class actions to the lesser of $500,000.00 or 1 percent of its net worth.  15 U.S.C. 1692k.  The statute does not define "net worth" or provide any guidance on how to calculate the net worth. The Plaintiff sought Defendant's stipulation that its net worth was $3 million, to which the Defendant replied that it would agree to stipulate to $2.5 million.  (Ex. 1).  Absent a stipulation, the net worth of the Defendant must be calculated using some standard of accounting that is generally accepted. Rosenberg has not described any generally accepted accounting method she used to arrive at her net worth calculation.

The Fourth Circuit has held in Equal Access to Justice Cases, net worth must be calculated based on Generally Accepted Accounting Principles (GAAP). *See Broaddus v. U.S. Army Corps of Eng'rs,* 380 F.3d 162, 166–167, 169 (4th Cir.2004).  The Court in *Broaddus*

recognized that in order to determine the net worth of an individual seeking reimbursement of attorneys fees, it must be able to calculate that the applicant's net worth is less than the threshold amount of $2 million set forth in the statute.  In EAJA cases, like in the FDCPA cases, the person seeking to establish its net worth has an incentive to put forward the lowest net worth possible. Like the FDCPA, the EAJA makes "net worth" a threshold issue, but does not define it.  The Fourth Circuit, relying on her sister courts, adopted GAAP for calculating net worth.  The Fourth Circuit, and this court, have relied on the GAAP for making net worth determinations.  The Supreme Court has observed,

> GAAP is not the lucid or encyclopedic set of pre-existing rules that [it might be perceived] to be. Far from a single-source accounting rulebook, GAAP encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time. GAAP changes and, even at any one point, is often indeterminate. The determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles.

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995)(There are "19 different GAAP sources.").   In the securities litigation context, financial statements are meant to be useful because they are used by outsiders to make decisions based on records wholly within the control of the company. *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 478-79 (S.D.N.Y. 2005)(Financial Accounting Standards Board ("FASB"), Statement of Financial Accounting Concepts No. 1 (1978). In order to make accounting information useful, preparers must aim to make the information reliable, truthful, verifiable, and most importantly understandable. FASB, Statement of Financial Accounting Concepts No. 2 (1980)) This is no different from the purpose of the financial statements and the net worth calculation in this case:  in order for it to be useful to the fact finder, it must be reliable, truthful, verifiable and understandable.   In this case, because of the Defendants refusal to produce documents that were used to create the spreadsheets, summaries, reports and data outputs, it is not verifiable or reliable.

4

**2.   The Defendant's purported net worth has been a moving target.**

Defendant has previously agreed to stipulate that its net worth is $2.5 million.  (Ex. 1). The fact that the net worth calculation has shifted, the supporting documents have been withheld, and the parties have met and conferred ad infinitum on this issue, means that it is a disputed fact about which the Defendant is in complete control of all the information it used to create the balance sheet, the financial summaries, that forms the foundation of the Klausner Bendler report and its own net worth calculation. The Plaintiff has no burden to produce any evidence of the Defendant's net worth. The Plaintiff, however, does not sit idly by as the Defendant attempts to move on evidence of a net worth that is inadmissible.

Defendant attempts to soften the effect of the fact that its net worth valuation has varied, in no small part because an acceptable accounting has never been done of the underlying documents that would support a net worth valuation, with the Declaration of Jeremy Bendler, one of Rosenberg's accountants.  (Ex. O to Def's Opp'n).  Jeremy Bendler's Declaration should be excluded from any consideration, even as rebuttal evidence since he has never been disclosed as a witness and is not being offered solely to impeach any witness or evidence under Rule 26(a)(1).

**3.   Contrary to its assertion that it has produced all the supporting financial documentation to support its net worth calculation, the Defendant has never produced supporting financial documents requested in discovery.**

The Defendant has not produced evidence of net worth, it has supplied the same summaries, database outputs and reports without such supporting documentation to establish the value of it assets, its liabilities, and to ensure that the assets and liabilities of the organization are all included in the summaries, worksheets, spreadsheets, database outputs, and reports that the

Declarant has alleged she relied on to calculate the Defendant's net worth.  Despite the detail in her Declaration, Defendant refused to supply any detail whatsoever in response to discovery.

For example, in interrogatory number 4 Plaintiff requested "the net worth of the Defendant and describe in detail how it was computed" and in request for production number 16 Plaintiff requested "all documents used to determine net worth calculation." (Ex. E to Def's Opp'n, filed under seal)(Doc. 87).  In response, the Defendant stated its purported net worth of $1,811,374, and instead of describing in detail how it arrived at the calculation, it merely stated, "Pursuant to Fed. R. Civ. P. 33(d), please refer to the financial statements setting forth the details of Rosenberg's net worth computation," then listed the same slew of self-serving conclusory documents that do not demonstrate in detail how the Defendant arrived at its calculation, including the so-called Klausner Bendler "handwritten notes." (Ex. E to Def's Opp'n at 7.) The documents referred to in the answer to the interrogatory are attached to the Defendant's Opposition as Ex. G.[1]   They are substantially the same documents attached to Ex. K, which is the subpoena response from Klausner Bendler.  The Klausner Bendler report and its engagement letter with Rosenberg result in an unaudited, unanalyzed, unauthenticated document.  The net worth offered by Rosenberg is the same as that purportedly communicated by Klausner Bendler – and now such a net worth is offered for the truth of the matter asserted, based on the Klausner Bendler unaudited "compilation." (Ex. G "Cross Reference Summary Sheet")(first page, not bates numbered).  Klausner Bendler implicitly identifies the unreliability of underlying "financial

---

[1] Rule 33(d) only excuses a response to interrogatory if an answer may be of equal burden to either party and can be determined by examining, auditing, compiling, abstracting or summarizing a party's business records.  In this case the interrogatory requested the detailed information on how net worth was computed.  That explanation was not supplied in the documents produced, and in fact, was never disclosed until the Rosenberg Declaration was filed. The whole point of this motion is that Rosenberg never produced documents susceptible of auditing, review, summarizing or abstracting – they were only summaries to begin with.

statements" that Rosenberg provided to it in order to come up with the compilation report. It is probably a standard disclaimer, but for good reason, and worth reading every word – Klausner Bendler did not review or audit the financial statements for compliance with generally accepted accounting principles.   The Klausner Bendler report specifically states that Rosenberg elected ***not*** to comply with the generally accepted accounting principles by omitting important documents from the accountant such as "substantially all" disclosures, statement of income and retained earnings, and cash flow.  (Ex. G, Bates No. 142).   In the engagement letter, Klausner Bendler provides an explanation for the reason that its compilation is legally an unreliable document:

> A compilation differs significantly from a review or an audit of financial statements. A compilation does not contemplate performing inquiry, analytical procedures, or other procedures performed in a review. Additionally, a compilation does not contemplate obtaining an understanding of the company's internal control; assessing fraud risk; testing accounting records by obtaining sufficient appropriate audit evidence through inspection, observation, confirmation, or the examination of source documents (for example, cancelled checks or bank images); or other procedures ordinarily performed in an audit. Accordingly, we will not express an opinion or provide any assurance regarding the financial statements being compiled.

(Ex. G, Bates No. 415).   While compilations may be sufficient under certain conditions to establish net worth, the documents are missing from the compilation report and they are the same documents sought by the Plaintiff throughout this case, embargoed by Defendant, so its own cherry-picked documents would be the only documents in evidence.   Contrary to Rosenberg's assertion, the Klausner Bendler report does not verify Rosenberg's net worth.  (Ex. C; Ex. E; Ex. G all contain the letter).   The compilation is not a reliable document for purpose of a court's determination of net worth:

> Our responsibility is to conduct the compilation in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. The objective of a compilation is to assist management in presenting financial information in the form of financial statements without undertaking to obtain or provide any assurance that there are no material modifications that should be

made to the financial statements.

*Id.*

**II.  Rosenberg's Testimony regarding net worth is expert testimony dressed in lay witness clothing, and thus inadmissible under Rules 701 and 702.**

**1.  Rosenberg's net worth calculation is comprised of a mixture of facts about which she has no personal knowledge, is hearsay, and is properly the subject of expert testimony, thus she does not meet the rigors of Rule 701.**

Regardless of whether a lay witness is a business owner, the testimony must be based on the Declarant's personal knowledge.  Rule 701 allows lay witnesses to testify as to opinions that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." *United States v. Perkins,* 470 F.3d 150, 159 (4th Cir. 2006), *see also, Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship,* 2009 WL 2762146, *3 (E.D.Va 2009) (*citing* Fed. R. Evid. 701). The court must exclude the testimony if the Defendant fails to satisfy even one of these conditions. *See Hirst v. Inverness Hotel Corporation,* 544 F.3d 221, 225 (3rd Cir. 2008) (holding that "[t]he plain language of Rule 701 establishes that lay opinion testimony must satisfy the criteria set forth in subsections (a), (b) *and* (c) in order to be admissible.") Here, the Defendant fails all three.

The Fourth Circuit explained, "Fed. R. Evid. 701 'does not distinguish between expert and lay *witnesses,* but rather between expert and lay *testimony, ...*' " *Perkins,* 470 F.3d at 155. "As an example of the kinds of distinctions that Rule 701 makes, the Committee instructs that the rule would permit a lay witness with personal experience to testify that a substance appeared to be blood, but that it would not allow a lay witness to testify that bruising around the eyes is indicative of skull trauma." *Id.* The Fourth Circuit makes it clear that both lay opinion testimony

8

and expert opinion testimony *may* also be based on firsthand knowledge while lay opinion *must* be based on firsthand knowledge. *Perkins*, 470 F.3d at 156.

In 2000, Rule 701 was amended to include the words "within the scope of Rule 702" in part (c). Fed. R. Evid. 701 *Advisory Committee's Note* (2000). This important complementary requirement to Rule 701 requires analysis. The 2000 Amendment to the statute was made in part, " ... to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Fed. R. Evid. 701 *Advisory Committee's Note* (2000). Under the Amendment, a witness' testimony must be scrutinized under the rules regarding expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 *Advisory Committee's Note* (2000). The same concerns raised here are raised in the advisory notes: "By channeling testimony that is actually expert testimony to 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 by simply calling an expert witness in the guise of a layperson." These notes make it powerfully clear that there is an anticipated danger that a party will attempt to offer expert testimony through a lay witness and that this should be avoided.

The same notes on the 2000 Amendments describe examples of the " 'prototypical' ... type[s] of evidence contemplated by the adoption of Rule 701 relate[in] to the appearance of persons, degrees of light or darkness, sound, size, weight, distance, and an endless number of items which cannot be described factually in words apart from inferences." Fed. R. Evid. 701 *Advisory Committee's Note* (2000), *quoting Asplundh Mfg. Div. v. Benton Harbor Egg's*, 57 F.3rd 1190, 1196 (3rd Cir. 1995). Ordinary concepts such as speed, reasonableness, size, etc. are concepts for which life itself provides an education distinguishable from technical language and

conclusions regarding whether  complex accounting terminology procedures that must be used tp establish a debt collectors net worth for purposes of the FDCPA.

**A.   Under Rule 701(a), Rosenberg's Declaration is not rationally based on the perception of the witness.**

Even though Ms. Rosenberg is the "sole member" and "one-hundred percent owner of Rosenberg" her Declaration testimony is but a pass-through for hearsay and expert testimony. *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400-01 (4th Cir. 1994).  Her Declaration claims that her statements "are based on her personal knowledge and her review of the business records of Rosenberg, which are created and maintained in the ordinary course of business." Rosenberg's Decl. ¶¶ 2-3.  However, her Declaration is actually based on reports received from her staff.  *TLT*, 33 F.3d at 400.  In *TLT*, the Fourth Circuit held inadmissible the lay opinion testimony of a construction manager about the collapse of fan shafts in a tunnel because he was relying on reports created by his staff who "were his eyes and ears in the field." *Id.*  In that case, the Court reasoned that if the testimony was based on reports created from the perceptions of others rather than his own perception, then the testimony was by definition not based on his perception.  *Id.*  Also in *TLT*, the Fourth Circuit held that the contents of a memorandum created by a lay witness was also inadmissible hearsay, even though it may have been a business record. *Id.*

The court reasoned, "We find that the district court properly excluded Merrill's memorandum because it constitutes hearsay; the written words of the document constitute hearsay as do the statements of TLT, through its representatives, summarized in the document. Although the document itself may be admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), TLT has failed to point to any hearsay exception under which

the statements by TLT's representatives should have been admitted." *Id*. at 401.  In this case, like the memorandum in *TLT,* any compilation, balance sheet or other summary document that refers or relies on other, underlying documents for the truth of the facts therein, the summaries, reports, spreadsheets that reflect that information are inadmissible when offered for the purpose of establishing as true the facts – in this case the figures – contained in the report.  *Id*.

There is no business owner exception to this rule.  The Fourth Circuit has held it is the testimony not the witness that is determinative. *Perkins,* 470 F.3d at 155.  Courts outside this district and division have observed that business owners may possess sufficient personal knowledge and have enough hands-on experience in the operation of their businesses to give a lay opinion of an organization's value, but it is not an exception or presumption.  In this case, it is established that Ms. Rosenberg has testified that she is not an accountant, and that her employees and outside accountants are the persons that perform the accounting functions for her organization, and who created the reports on which she relies.  The net worth calculation requires at a minimum the application of accounting principles, and there is no evidence that Ms. Rosenberg has or used such expert knowledge.

> This Court explored the line between Rule 701 and 702 in *Perkins*. We held "lay opinion testimony *must* be based on personal knowledge." *Perkins,* 470 F.3d at 155–56. In order to adequately build a foundation for lay testimony, it *293 must be "based on the perception of the witness." *TLT–Babcock Inc*. *v*. *Emerson Elec*. *Co*., 33 F.3d 397, 400 (4th Cir.1994) (citing Fed. R. Evid. 701). "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in possession of the jurors.' " *Certain Underwriters at Lloyd's, London v*. *Sinkovich,* 232 F.3d 200, 203 (4th Cir.2000) (citation omitted). Therefore "[a]t bottom ... Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." *Perkins,* 470 F.3d at 156.

*United States v*. *Johnson,* 617 F.3d 286, 292-93 (4th Cir. 2010).

**B. Rule 701(b), Rosenberg's Declaration is not helpful to the determination of a fact in issue.**

A lay witness cannot offer testimony that a factfinder can see for himself.  Unlike cases where the court has allowed a lay witness to offer otherwise expert testimony such as the "reasonableness" of force being applied, the smell at the scene of an accident, or the speed of a car before an accident, where the factfinder cannot himself observe first hand the lay observation, the Court here should have the ability to see and perceive not just a summary, spreadsheet, output or report, but also the documents that form the foundation and the basis of the reports. *Id*.  Therefore, a witness that offers testimony about the information contained in a report, he or she must either produce the documents upon which the report was made, and how such information has been used to establish the net worth of a business based on the Generally Accepted Accounting Principles or other established accounting method, such testimony *needs* to be expert testimony, based on some specialized knowledge, training, or skill in order to be helpful to the fact finder.

In *Cameron v. City of New York,* 598 F.3d 50, 62 (2nd Cir. 2010), the court stated that the "helpfulness requirement is designed to provide assurance [ ] against the admission of opinions which would merely tell the jury what result to reach or would constitute an attempt to introduce meaningless assertions which amount to little more than choosing up sides." *Id*. After noting the standard, the court observed that it was not helpful for the jury to have a lay witness opine on the similarities and differences between two things that could be observed by the jury in court. *Id*. Here, the Second Circuit succinctly states the problem with allowing lay testimony of this kind on summary judgment because it provides the conclusion that the factfinder must reach without any of the underlying documentation necessary to reach the conclusion. The Defendant's ability

to present to the Court as a fact only one particular conclusion regarding net worth based on cherry-picked and unauthenticated documents is nothing more an attempt to get into evidence otherwise inadmissible evidence simply because the purveyor of the inadmissible evidence is the business owner.

In *Hirst v. Inverness Hotel Corporation*, the Third Circuit noted that "[a]s the Sixth Circuit has recognized, 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" 544 F.3d 221, 226 (3rd Cir. 2008), *citing Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986). Such remarks constitute a "self serving, conclusory opinion" that amounts "to little more than choosing up sides..." *Hirst*, 544 F.3d at 227. The testimony given by Diane Rosenberg is not helpful to the Court's ultimate determination of the net worth of the Defendant because it is not based on documents that form the foundations of the summary, spreadsheet and accountant's reports she attempts to use to form the basis of her opinion. If it is in fact lay testimony not subject to an expert's report, as the Defendant urges, then it is improper simply for the fact that it is also her opinion about summaries that the ordinary juror could examine and determine for himself or herself the net worth of the company.

**C. Rule 701(c), the testimony is of the nature that it is based on scientific, technical or other specialized knowledge within the scope of Rule 702.**

A lay witness cannot offer testimony regarding matters that are not within the common knowledge of the jury. *Thompson v. Brisk Transp., LP*, 401 F. App'x 826, 828 (4th Cir. 2010). In *Seaward Intern, Inc. v. Price Waterhouse,* the Virginia Supreme Court " 'generally accepted auditing standards' (accounting) and the application of that definition to the facts of a particular

13

case, are matters beyond the common knowledge of laymen." 239 Va. 585, 590 (1990)(citation omitted); *accord McCabe v. Reed*, 55 Va. Cir. 67 (2001).  The pretrial designation of a witness as lay or expert is important for this reason. *See e.g. U.S. v. Riddle*, 103 F.3d 423, 428-29 (5th Cir. 1997). The Rules of Evidence "forbid the admission of expert testimony dressed in lay witness clothing." *Perkins,* 470 F.3d at 156.  *See also* Fed. R. Evid. 701 advisory committee's note (which specifies that the rule is intended to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P 26 and Fed. R. Crim. P. 16 by simply calling an expert witness under the guise of a layperson.").

Unlike Rule 701, Rule 702 carries with it certain reliability requirements before an opinion based upon specialized knowledge can be shared with the jury. Without the scrutiny of the requirements set forth in Rule 702, lay testimony under Rule 701 improperly slips through to the factfinder without any requirement that reliable principles and methods have been applied before coming to conclusions which require a specialized field of knowledge about the accounting principles and documents used to arrive at the Defendant's net worth.  In this case, we are confronted with a situation expressly forbidden by Rule 701 where the Defendant attempts to slip in evidence based on her status as the business owner, her experience and credentials, not based on her observations and deep knowledge of the information that formed the bases of the balance sheets, spreadsheets, reports and summaries on which she purports to rely. *United States v. Johnson*, 617 F.3d at 293.

**2.  The Defendant bears the burden to prove its net worth with admissible evidence.**

The Defendant bears the burden to demonstrate its net worth for the purpose of invoking the limitations of class action civil liability limitations.  The Plaintiff's timely and properly sought discovery on all necessary issues concerning net worth, including meeting and conferring

on numerous occasions, exchanging correspondence and moving the court for relief.  (Ex. 2). Defendant was intractable.  Therefore, instead of wasting more resources on an issue that is completely within the Defendant's burden to carry, the Plaintiff properly made its strategic and correct decision to forbear until the Defendant attempted to use inadmissible evidence in a hearing, on a motion or at trial.  This was only occasioned by Ms. Rosenberg's Declaration. Plaintiff has made informed decisions about conducting litigation against this defense team.  For instance, and by way of example only, in *Kingery v. Quicken Loans*, No. 2:12CV1353 (N. D. W.Va.)(*see e.g.,* Docs. 152, 183, 200) and other cases cited in the Plaintiff's opening brief, the defendants there operated in a similar fashion – non-responsiveness to discovery requests, impermissibly picking and choosing what discovery to respond to and what documents to supply without seeking a protective order first, supplying an unprepared witness, failing to make disclosures.

The Plaintiff, after months of discovery, meeting and conferring, and having received five supplemental mandatory disclosures and three supplemental discovery responses, had no reason to believe that Klausner Bendler would be a witness in its case.  The Defendant had the Klausner Bendler report on November 7, 2013, but did not disclose it until May 15, 2014, in its Fourth Supplemental Disclosure.  That is not timely supplementation under Fed. R. Civ. P. 26(e), that's gamesmanship and it should not be tolerated. The measure of timeliness is not whether a disclosure is supplemented before the discovery cutoff, but if it is made when the Defendant learned that its disclosure or response was incomplete or incorrect.  Defendant knew about the Klausner Bendler report at the time the first disclosures were made.  Supplementation six months later is not timely.

Furthermore, the Klausner Bendler report has never been authenticated, nor has Klausner Bendler nor any person with knowledge ever been disclosed, therefore it cannot be authenticated. Late or non-disclosure is the same tack taken by defendants in *Kelly v. Nationstar*, No. 3:13cv311 (E.D. Va.) where the defendant embargoed information from its mandatory disclosures and discovery responses concerning it's planned defenses – even affirmatively representing that it was not pursuing a bona fide error defense until very late in the discovery process when it had known about the information since the inception of the case. *See, e.g.* Docs. 63, 105, 114.

Yes, it is a legal surprise when a Defendant makes an untimely disclosure and never identifies a witness that can authenticate a document. The Plaintiff was under no obligation to issue a deposition subpoena to Klausner Bendler because he had no reason to depose a third-party that wasn't going to be a witness in the case. If the Defendant didn't plan to use its accountant to establish its net worth, then the Plaintiff certainly had no obligation to do so. In this case, the Plaintiff clearly acted properly, prudently and zealously in attempting to obtain the financial information that the Defendant would not produce, but upon which it now relies.

## Conclusion

For these reasons discussed, the Plaintiff respectfully requests and Order striking (1) the Declaration of Diane Rosenberg and the exhibits attached thereto, (2) striking the Klausner Bendler report; and (3) precluding net worth evidence and witnesses not previously disclosed.

Respectfully submitted,
CLAUDIO FARIASANTOS
By Counsel


_____       /s/_____
Susan Mary Rotkis, Esq. (VSB #40693)
Leonard Anthony Bennett, Esq. (VSB #37523)

Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Kristi C. Kelly, Esq. (VSB #72791)
Andrew J. Guzzo, Esq. (VSB #82170)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
703-424-7570
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Dale Wood Pittman, Esq. (VSB #15673)
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, VA 23803-3212
(804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

Matthew James Erausquin, Esq. (VSB #65434)
Janelle E. Mason, (VSB No. 82389)
Casey S. Nash, (VSB No. 84261)
Consumer Litigation Associates PC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
703-273-6080
Email: matt@clalegal.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch, Esq.
Maryia Jones

Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
E-mail:  john.lynch@troutmansanders.com
E-mail:  maryia.jones@troutmansanders.com

_____/s/_____
Susan M. Rotkis, VSB# 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, V A 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Fax
E-mail:  srotkis@clalegal.com
