IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLAUDIO FARIASANTOS,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.                                    Civil Action No. 3:13cv543

ROSENBERG & ASSOCIATES, LLC,

        Defendant.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT ROSENBERG & ASSOCIATES, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES (Docket No. 66) and PLAINTIFF'S OBJECTION AND MOTION TO STRIKE DECLARATION OF DIANE ROSENBERG AND EVIDENCE OF NET WORTH PURSUANT TO RULE 56(c)(4) AND RULE 37(c)(1) (Docket No. 79). For the reasons set forth below, Defendant's motions will be denied and Plaintiff's motion will be granted in part and denied in part.

### BACKGROUND

This case arises from debt-collection letters sent by Defendant Rosenberg & Associates, LLC ("R&A") that include disclosures in alleged violation of the Fair Debt Collections

Practices Act (the "FDCPA"). Plaintiff Claudio Fariasantos ("Fariasantos") received one of the letters and brought suit on behalf of himself and a class of other Virginia consumers who received such letters. R&A does not contest liability in this case, (Docket No. 68, ¶ 8, at 3), and this Court has certified a class of all Virginia residents who received identical letters in an attempt to collect a home loan debt that was incurred primarily for personal, household, or family purposes during the one year period prior to the filing of the Complaint in this matter, (Docket No. 64).

Although the parties stipulate to liability, there is disagreement as to the proper amount of damages and whether the case has been rendered moot by operation of an Offer of Judgment that R&A served on Fariasantos on June 16, 2014. With respect to damages, R&A submits a motion for summary judgment regarding its net worth based upon produced documentation, a declaration from R&A's sole member and owner, Ms. Diane S. Rosenberg ("Rosenberg"), and a summary sheet verifying Rosenberg's calculations prepared by Klausner Bendler + Associates, P.C. ("Klausner Bendler"). Fariasantos, on the other hand, moves to strike the net worth information provided by R&A. Fariasantos contends, assuming its motion is successful, that R&A has failed to provide sufficient evidence to carry its burden of establishing a net worth. As a result, Fariasantos believes

2

that the class of consumers he represents is entitled to the maximum statutory damages available: $500,000.

## DISCUSSION

### I.   Subject Matter Jurisdiction

The Court first addresses R&A's contention that its Rule 68 Offer of Judgment has rendered this action moot and deprived the Court of subject matter jurisdiction.  Because "the exercise of judicial power depends upon the existence of a case or controversy," Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964), "an actual controversy must be extant at all stages of review" to retain the Court's continued oversight, Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  If the plaintiff "receives the relief he or she sought to obtain through the claim," for example, the case can become moot.  Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011).  That is because there remains no case or controversy and the Court no longer has subjection matter jurisdiction.  Id.

This Court has previously held that one way in which a plaintiff can receive complete relief is the tender of an offer of judgment under Rule 68.  Milbourne v. JRK Residential Am., LLC, 2014 WL 1369378, *3 (E.D. Va. 2014).  Federal Rule of Civil Procedure 68 provides that a defendant may make "an offer to allow judgment on specified terms."  If the offer is not timely

accepted, it may lapse. See Bradford v. HSBC Mortg. Corp., 280 F.R.D. 257, 260 (E.D. Va. 2012). According to current Fourth Circuit precedent, if the Rule 68 offer "unequivocally offers a plaintiff all of the relief [h]e sought to obtain, the offer renders the plaintiff's action moot." Warren v. Sessions & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012) (internal quotations omitted). This theory is not based on the idea that the plaintiff actually obtained the full amount of damages pled, but rather that the plaintiff "could have obtained through acceptance of the offer all that he could have hoped to obtain through litigation." Amrhein v. Regency Mgmt. Servs., LLC, 2014 U.S. Dist. LEXIS 36477, *13 (D. Md. 2014). As the Seventh Circuit put it, "You cannot persist in suing after you've won." Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, 1015 (7th Cir. 1999).

Yet, courts have been increasingly reticent to adopt or extend this theory in the wake of Justice Kagan's dissent in Genesis Healthcare Corp. v. Symczyk. 133 S. Ct. 1523 (2013). In Symczyk, the Supreme Court noted a disagreement between the Courts of Appeals as to "whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot," but the majority did not ultimately reach or resolve the question. Id. at 1528-29. Writing for four dissenters, however, Justice Kagan made their view quite clear:

4

>[A]n unaccepted offer of judgment cannot
>moot a case. When a plaintiff rejects such
>an offer — however good the terms — her
>interest in the lawsuit remains just what it
>was before. And so too does the court's
>ability to grant her relief. An unaccepted
>settlement offer — like any unaccepted
>contract offer — is a legal nullity, with no
>operative effect. . . . So a friendly
>suggestion to the Third Circuit: Rethink
>your mootness-by-unaccepted-offer theory.
>And a note to all other courts of appeals:
>Don't try this at home.

Symczyk, 133 S. Ct. at 1533-34 (Kagan, J., dissenting).

Although it appears that a majority of courts disagree, see Diaz

v. First Am. Home Buyers Prot. Corp., 732 F.3d 948, 953 (9th

Cir. 2013) (adopting the position set out in the Symczyk

dissent, but noting that "the majority of courts and

commentators appear to agree with the Seventh Circuit that an

unaccepted offer will moot a plaintiff's claim"), even the

Seventh Circuit has begun to question its own approach, see

Scott v. Westlake Services LLC, 740 F.3d 1124, 1126 n. 1 (7th

Cir. 2014), and limit the extent of its rule, see Smith v.

Greystone Alliance, LLC, 772 F.3d 448, 450-51 (7th Cir. 2014)

("A court can't decide the merits and then dismiss for lack of

jurisdiction. . . . An offer that the defendant or the judge

believes sufficient, but which does not satisfy the plaintiff's

demand, does not justify dismissal."). That said, it is for the

Fourth Circuit, and not this Court, to decide whether the rule set out in Warren remains good law.

In any event, R&A's offer would fail even assuming Warren's continued validity. For the theory's rationale to hold, a Rule 68 offer must be complete, unequivocal, and unconditional. See Milbourne, 2014 WL 1369378, at *3. Although a specific sum is not necessary, id., "the plaintiff must know unequivocally what is being offered in order to be responsible for refusing such offer," Warren, 676 F.3d at 371. Rule 68 is meant to encourage settlement, not to short-circuit the judicial process. R&A's "offer of judgment" attempts the latter.

R&A's offer of judgment employs conditional language that encompasses the controversy rather than resolving it. Because the FDCPA allows statutory damages for class members of 1.00% of R&A's net worth, see 15 U.S.C. § 1692k(A)(2)(B), R&A offers all as-yet-unnamed class members 1.01% of R&A's net worth. (Docket No. 68-5.) Yet, this assertedly "complete" offer of relief to the class-to-be is almost entirely unwound in the adjacent sentence which states that: "Said amount is to be agreed by the parties or, if they are unable to agree, as determined by the Court." Id. Far from providing a complete, unequivocal, and unconditional offer of judgment, that sentence merely summarizes the steps remaining in the litigation. In essence, R&A's offer of judgment provides an invitation to settle or, that failing,

6

judicial recourse.[1]  Because the offer was "predicated on what the district court as fact finder might or might not do" and "provided no guarantee that [Fariasantos] would not . . . challenge the veracity of [R&A's submissions]," the Court cannot find that the offer served to deprive the court of subject matter jurisdiction by mooting the case and eliminating the controversy.  Warren, 676 F.3d at 372-73.[2]

## II. Fariasantos' Motion to Strike

Next, it is necessary to evaluate Fariasantos' motion to strike.  Fariasantos contends that the declaration of Diane Rosenberg, the evidence used by R&A in support of its net worth valuation, and the report prepared by Klausner Bendler should all be stricken.  (Docket No. 79.)  Fariasantos describes R&A's behavior to date as "discovery abuse," and argues that R&A is attempting to use "cherry-picked" information that has been "withheld" until the "very end of the case."  (Docket No. 80, at

---

[1] If the defendant's net worth were beyond reasonable factual dispute, perhaps such facially "conditional" language could be less problematic than that proposed here.  See, e.g., Johnson v. Midwest ATM, Inc., 881 F. Supp. 2d 1071, 1074 (D. Minn. 2012) (finding an offer for "1.01 per centum of [Defendant's] net worth as determined by the Court" sufficiently definite where the Court found that the plaintiff "[could not] claim he is unable to determine the lesser of $500,000 or 1.01% of [the defendant's] net worth" based on the evidence in the record).

[2] As in Warren, the Court "need not determine whether an offer of attorney's fees 'to date' can render such a claim moot" because R&A's offer of statutory damages alone failed to moot the claim. 676 F.3d at 371 n.3.

3.) Such colorful descriptions precede more by characterization than by argumentation and factual base. All documents upon which R&A relies were produced before the close of discovery and have been in Fariasantos' possession for well over half-a-year. Although R&A has objected to requests for information along the way and withheld information until the objections' resolution, merited objections – even where eventually overruled – hardly warrant Fariasantos' breathless surprise.

On the other hand, the timing of Farisantos' motion to strike is itself rather curious. Fariasantos did not challenge the sufficiency of discovery, move to compel additional document production, or attempt to re-open its deposition of Rosenberg earlier and now claims that waiting to exclude the evidence at issue was "a strategic choice." (Docket No. 96, at 2.) In fact, Fariasantos not only failed to challenge R&A's net worth figure, but also appears to have relied upon that figure in its earlier motions and hearings. (Docket No. 50, at 16 (discussing the "modest recovery fund" and citing to figures provided by R&A); id. at 17 (estimating "a likely recovery of less than █████" per consumer in a class of 2,332); September 29, 2014 Hr'g Tr. at 27:1-2 (discussing a "maximum recovery of roughly ████ for the state-wide class").) Notwithstanding these considerations, the Court will examine Fariasantos' arguments in turn.

### A.   Rosenberg's Declaration

Under Rule 56, a party may use an affidavit or declaration in support of or opposition to a motion for summary judgment so long as the declaration (1) is "made on personal knowledge," (2) "set[s] out facts that would be admissible in evidence," and (3) "show[s] that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). With a few minor exceptions, Rosenberg's declaration satisfies these requirements.

### 1.   Competence to Testify

According to the advisory committee's notes to the 2000 amendments to Federal Rule of Evidence 701, "most courts have permitted the owner or officer of a business to testify to the value . . . of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert . . . because of the particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701, Committee Notes on Rules – 2000 Amendment (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993)). Of course, lay testimony must still be based on the declarant's personal knowledge. See TLT-Babcock, Inc. v. Emerson Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994). However, if Rosenberg has "personal knowledge of the components and materials of the [valuation] report" and either (1) "helped prepare the report

based on personal knowledge, or (2) "the contents of the report are admissible themselves," then she need not qualify as an expert witness in order to testify to the value of her business. See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship., 2009 WL 2762146, *3 (E.D. Va. 2009) (citing Lightning Lube, 4 F.3d at 1175). Because Rosenberg has personal knowledge of the valuation components and the underlying contents of the valuations are themselves admissible, Rosenberg is competent to testify under Rule 701.

### 2. Personal Knowledge

Contrary to Fariasantos' assertions, Rosenberg's testimony to date sufficiently evidences her personal knowledge of, and involvement with, her own business. Fariasantos argues that Rosenberg "refused to provide any substantive answers as to the financial condition, history or value of the Defendant" during her deposition. (Docket No. 80, at 6.) Of course, to receive substantive answers, Fariasantos needed to have asked substantive questions. This he failed to do. Whether through poor understanding of the subject matter or poor questioning, Fariasantos did not probe the issue of R&A's net worth with great depth. Questions that were asked were sufficiently answered. Rosenberg's minor verbal hedges about a few issues do not reflect the kind of completely unaware and uninformed individual that Fariasantos attempts to paint in his motion to

10

strike and do not render her declaration statements unreliable. The fact that Fariasantos did not ask sufficiently detailed or rigorous questions regarding R&A's net worth during Rosenberg's deposition is Fariasantos' problem, not R&A's. And, although Rosenberg's admitted mistake regarding R&A's net worth may reflect upon her credibility, (Docket No. 68-6, ¶ 20, n.1.), it does not render her declaration and its attachments inadmissible.

### 3. Admissible in Evidence

The final step in evaluating the Rosenberg declaration is determining the admissibility of the underlying evidence. For the reasons discussed below, the Court finds that R&A's net worth evidence and the Klausner Bendler report are admissible. That said, Rosenberg also has provided 2014 valuation estimates with her declaration without appearing to attach any supporting evidence from the documents produced during the discovery period. Because the "contents of the report" were not produced in this instance and are not themselves admissible over Fariasantos' objection, the Court will strike paragraphs 60 and 61 of the Rosenberg declaration along with exhibits 17 and 18.

## B.   Net Worth Evidence

Federal Rule of Evidence 803(6) provides that business records are admissible if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).   R&A's supporting net worth records fall within the scope of the rule and are therefore admissible.

Based on the parties' submissions, it appears that the net worth evidence cited by R&A was kept in the regular course of business and was made at or near the time by someone with knowledge.   Fariasantos' primary objections center around whether Rosenberg is a "qualified" witness per Rule 803(6)(D) and whether the source of information "lacks trustworthiness."

As R&A points out, while a records custodian is a proper witness for establishing the foundation requirement of a business record, Rule 803(6) provides for a much more expansive

12

class of witnesses who can establish this foundation.  See U.S. v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993).  The "qualified witness" language of Rule 803(6) is "broadly interpreted to require only that the witness understand the record-keeping system."  Id.  Rosenberg need not have personally performed every single role within the company or created every single document to serve as a qualified witness under Rule 803(6) and provide testimony that such documents were generated in the normal course of business.

In addition, Fariasantos does not effectively demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.  Just because Rosenberg made an error in her final balance sheet calculations does not mean that the sources of information lack trustworthiness or that the methods or circumstances of preparation of the underlying documents are suspect.  And, while the reliability of R&A's internal balance sheet calculations might be limited to some degree based on Rosenberg's error, the Court will not – for this reason alone – strike a calculation summary that would be otherwise admissible under Federal Rule of Evidence 1006.  Cf. Southern Bank & Trust Co. v. Praestans One, LLC, 2013 WL 1155526, *9 (E.D. Va. 2013) ("Although the payment history attached to Mr. Hill's declaration may not itself be a business record, excepted from the hearsay rule, the evidence it

is based on . . . clearly would be admissible as business records. Moreover, a summary of this evidence similar to the payment history attached to Mr. Hill's declaration may be admissible at trial pursuant to Rule 1006 of the Federal Rules of Evidence. Accordingly, the Court finds that the Hill declaration and attached payment history may properly be considered in support of the plaintiff's motion for summary judgment.") (internal citations omitted).

### C.   Klausner Bendler Report

As with Rosenberg's own internal calculations of R&A's net worth, the Klausner Bendler report provides a calculation summary based upon admissible evidence per Rule 1006. This report was authenticated by Jeremy Bendler by submitting a sworn declaration in support of R&A's motion for class certification. (Docket No. 38-4.) Although Fariasantos stresses the qualifying language on the face of the report to demonstrate that the calculations are unreliable and based on insufficient evidence, (Docket No. 80, at 14; Docket No. 96, at 6-8.), the valuation summary is based upon admissible documents. This is all that is required to deny Fariasantos' motion to strike. Whether the valuation presented by the report constitutes sufficient evidence to determine R&A's objective net worth is a separate question to which the Court now turns.

### III. R&A's Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party may move for summary judgment, and the Court must ascertain whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the Court must determine whether a genuine dispute of material fact exists to prevent factually unsupported claims and defenses from proceeding to trial. See Hostettler v. Auto-Owners Ins. Co., 744 F. Supp. 2d 543, 545 (E.D. Va. 2010). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." U.S. v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

As discussed above, Fariasantos' briefing offers more bluster than facts and generates more heat than light. Rather than disputing the facts contained in R&A's motion for summary judgment, Fariasantos largely objects to their admissibility. The thrust of Fariasantos' approach is that the Court should disregard all the facts asserted thus far and, in the absence thereof, grant the maximum statutory damages in the amount of $500,000. This, the Court declines to do. Fariasantos has not moved for summary judgment in this amount, and even counsel for Fariasantos has noted that R&A is not "a $50 million defendant." (September 29, 2014 Hr'g Tr. at 12:13-14.) Fariasantos'

approach is particularly difficult to accept in the face of his previous reliance upon the net worth estimates provided by R&A at the class certification stage. See supra, at 8.

R&A need only provide sufficient evidence to allow the Court to determine its net worth. Cf. Broaddus v. U.S. Army Corps of Eng'rs, 380 F.3d 162, 168 (4th Cir. 2004). Admittedly, R&A appears to have provided sufficient evidence to find a reasonable net worth. See id. at 168-69 (acknowledging that "some informality of proof is appropriate" and that, while a "bare assertion" of net worth will not suffice, documentation that "allows the court to subtract liabilities from assets" is "more than ample"); Cabo Distrib. Co. v. Brady, 1993 WL 313112, *2, n.1 (N.D. Cal. 1993) (noting that closely held corporations are not required to obtain fully audited financial statements in the normal course of business, and accepting the party's "averments and unaudited balance sheets" to determine net worth absent strong impeaching evidence). However, R&A has not painted a particularly clear picture of what the net worth is for purposes of summary judgment. Rosenberg admits to a fairly large computational error, (Docket No. 68-6, ¶ 20, n.1.), and a reasonable jury could potentially arrive at alternate net worth figures based on the testimony presented at trial.

The Court will not accept on summary judgment a net worth figure that neither side, in fact, purports to reflect R&A's

16

real net worth. R&A has asserted that the figure it provides is not actually correct and that - if Rosenberg is to be believed - the true value of the business is drastically smaller than represented. Fariasantos acknowledges that the $500,000 statutory cap is significantly higher than 1.00% of R&A's net worth, but has shown that R&A's "net worth calculation has shifted" over time and that R&A may not have provided "an acceptable accounting."

The jury will have the final word.

## CONCLUSION

For the foregoing reasons, DEFENDANT ROSENBERG & ASSOCIATES, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES (Docket No. 66) will be denied and PLAINTIFF'S OBJECTION AND MOTION TO STRIKE DECLARATION OF DIANE ROSENBERG AND EVIDENCE OF NET WORTH PURSUANT TO RULE 56(c)(4) AND RULE 37(c)(1) (Docket No. 79) will be granted in part and denied in part.

It is so ORDERED.

_____ /s/ _REP_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 27, 2015